UNITED STATES DISTRICRT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PEDDIE JENKINS,                                      )
                                                     )
                    Plaintiff,                       )
-vs.-                                                )
                                                     )
THE COUNTY OF WASHINGTON; WASHINGTON )
COUNTY SHERIFF'S DEPARTMENT;                         )
WASHINGTON COUNTY SHERIFF JEFFEREY                   )
MURPHY, individually; WASHINGTON COUNTY             )
UNDERSHERIFF JOHN WINCHELL, individually,            )    **COMPLAINT**
WASHINGTON COUNTY SHERIFF'S                          )
DEPUTY SCOTT STARK, individually;                    )    **CIVIL ACTION #:_ 1:14-CV-0064**
VILLAGE OF HUDSON FALLS;                             )                    **(GTS/RFT)**
HUDSON FALLS POLICE DEPARTMENT;                      )
HUDSON FALLS POLICE CHIEF RANDY                      )
DIAMOND, individually; HUDSON FALLS                  )
POLICE OFFICER SCOTT GILLIS, individually;           )    **Demand for Jury Trial**
HUDSON FALLS POLICE OFFICER                          )
SCOTT MOULTHROP, individually;                       )
CITY OF GLENS FALLS; CITY OF                         )
GLENS FALLS POLICE DEPARTMENT;                       )
GLENS FALLS POLICE CHIEF WILLIAM                     )
VALENZA, individually; GLENS FALLS                   )
POLICE OFFICER  PETER CASERTINO,                     )
individually; GLENS FALLS POLICE                     )
OFFICER PAUL FRETTELOSO, individually;               )
NEW YORK STATE COMMISSIONER OF                       )
DEPARTMENT OF CORRECTIONS                            )
AND COMMUNITY SUPERVISION;                           )
NEW YORK STATE PAROLE                                )
OFFICER MARIO TORRES, individually;                  )
NEW YORK STATE PAROLE OFFICER                        )
SCOTT HURTEAU, individually;                         )
WASHINGTON COUNTY DISTRICT                           )
ATTORNEY'S OFFICE; WASHINGTON COUNTY )
DISTRICT ATTORNEY KEVIN KORTRIGHT,                   )
individually; WASHINTON COUNTYASSISTANT             )
DISTRICTATTORNEY DEVIN ANDERSON,                    )
individually; and, WASHINGTON COUNTY                 )
ASSISTANT DISTRICT ATTORNEY                          )
MICHAEL STERN, individually,                         )
                                                     )
                    Defendants.                      )
_____

Plaintiff, Peddie Jenkins, ("plaintiff") by and through his attorney, William E. Montgomery, III alleges the following against, defendants, The County of Washington, Washington County Sheriff's Department, Washington County Sheriff Jeffrey Murphy, Washington County Undersheriff John Winchell, Washington County Sheriff's Deputy Scott Stark, Village of Hudson Falls, Hudson Falls Police Department, Hudson Falls Police Chief Randy Diamond, Hudson Falls Police Officer Scott Gillis, Hudson Falls Police Officer Scott Moulthrop, City of Glens Falls, City of Glens Falls Police Department, City of Glens Falls Police Chief William Valenza, City of Glens Falls Police Officer Peter Casertino, City of Glens Falls Police Officer Paul Fretelloso, New York State Commissioner of Department of Corrections and Community Supervision, New York State Parole Officer Mario Torres, New York State Parole Officer Scott Hurteau, Washington County District Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern.

### PRELIMINARY STATEMENT

1.  Plaintiff Peddie Jenkins seeks relief for defendants' violation of his rights secured by the Civil Rights Acts of 1866 and 1871, 42 U.S.C. § 1983, 1985 and 1988, of his rights secured by the First, Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution, and his right secured under the laws and Constitution of the State of New York.  Plaintiff Peddie Jenkins seeks damages, both compensatory and punitive, and the award of cost and attorneys' fees, and such other and further relief the Court deems just and proper.

## JURISDICTION

2.  Plaintiff Peddie Jenkins brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 for violations of his civil rights, as said rights are secured by the First, Fourth, Fifth, Sixth, Eight, Thirteenth and Fourteenth Amendments of the Constitutions of the United States.

3.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 and 1367.

4.  The plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367 (a), over any and all state claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

5.  Venue is proper for the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1391 in that this is the District in which the claim arose.

## DEMAND FOR TRIAL BY JURY

6.  The plaintiff hereby demands a trial by jury as to all issues in this action pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7.  Plaintiff Peddie Jenkins is an adult African American male and a citizen of the United States of America who at all times hereinafter mentioned resided, in the Town of Granville, County of Washington, State of New York.

8.  At all times hereinafter mentioned, defendant the County of Washington, is a municipal corporation, organized and existing under and by virtue of the laws of the State of New York.

9. At all times hereinafter mentioned, the defendant Washington County Sheriff's Department is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to carry out all police functions for the Defendant County of Washington and assumes the risks incidental to the maintenance of its police force and the employment of police officers.

10. At all times hereinafter mentioned, defendant Washington County Sheriff Jeffrey Murphy was the sheriff for defendant County of Washington, and was responsible for, and the chief architect of, the policies, practices and customs of the defendant Washington County Sheriff's Department as well as responsible for hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers and detectives under his command. He is sued individually.

11. At all times hereinafter mentioned, defendant Washington County Undersheriff John Winchell was a duly sworn police officer of said defendant Washington County Sheriff's Department and acting under the supervision of the defendant Washington County Sheriff's Department and according to his official duties. He is sued individually.

12. At all times hereinafter mentioned, defendant Washington County Sheriff's Deputy Scott Stark was a duly sworn deputy of said defendant Washington County Sheriff's Department and acting under the supervision of the defendant Washington County Sheriff's Department and according to his official duties. He is sued individually.

13. At all times hereinafter mentioned, defendant Village of Hudson Falls is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

14. At all times hereinafter mentioned, defendant Hudson Falls Police Department is a municipal entity created and authorized under the laws of the State of New York. It is

authorized by law to carry out all police functions for the defendant Village of Hudson Falls and assumes the risks incidental to the maintenance of its police force and the employment of police officers.

15. At all times hereinafter mentioned, defendant Hudson Falls Police Chief Randy Diamond was the chief of police for defendant Village of Hudson Falls and responsible for, and the chief architect of, the policies, practices and customs of defendant Hudson Falls Police Department as well as responsible for hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers and detectives under his command. He is sued individually and in his official capacity.

16. At all times hereinafter mentioned, defendant Hudson Falls Police Officer Scott Gillis was a duly sworn police officer of said defendant Hudson Falls Police Department and acting under the supervision of defendant Hudson Falls Police Department and according to his official duties. He is sued individually.

17. At all times hereinafter mentioned, defendant Hudson Falls Police Officer Scott Moulthrop was a duly sworn police officer of said defendant Hudson Falls Police Department and acting under the supervision of defendant Hudson Falls Police Department and according to his official duties. He is sued individually.

18. At all times hereinafter mentioned, defendant the City Of Glens Falls is a municipal corporation, organized and existing under and by virtue of the laws of the State of New York.

19. At all times hereinafter mentioned, defendant City of Glens Falls Police Department is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to carry out all police functions for defendant City of

Glens Falls and assumes the risks incidental to the maintenance of its police force and the employment of police officers.

20. At all times hereinafter mentioned, defendant City of Glens Falls Police Chief William Valenza was chief of police for defendant City of Glens Falls Police Department and responsible for, and the chief architect of, the policies, practices and customs of defendant City of Glens Falls Police Department as well as responsible for hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers and detectives under his command. He is sued individually.

21. At all times hereinafter mentioned, defendant City of Glens Falls Police Officer Peter Casertino was a duly sworn police officer of said defendant City of Glens Falls Police Department and acting under the supervision of defendant City of Glens Falls Police Department and according to his official duties. He is sued individually and in his official capacity.

22. At all times hereinafter mentioned, defendant City of Glens Falls Police Officer Paul Fretelloso was a duly sworn police officer of said defendant City of Glens Falls Police Department and acting under the supervision of the defendant City of Glens Falls Police Department and according to his official duties. He is sued individually.

23. At all times hereinafter mentioned, defendant New York State Commissioner of Department of Corrections And Community Supervision was a municipal corporation, organized and existing under and by virtue of the laws of the State of New York. It is authorized by law to carry out all supervisory functions relative to the release and supervision of parolees and the participation of its employees in various law enforcement functions and operations, individually and in cooperation with other law enforcement agencies.

24. At all times hereinafter mentioned, defendant New York State Parole Officer Mario Torres was a duly sworn parole officer of defendant New York State Commissioner of Department of Corrections and Community Supervision and acting under the supervision of defendant New York State Commissioner of Department of Corrections And Community Supervision and according to his official duties. He is sued individually.

25. At all times hereinafter mentioned, defendant New York State Parole Officer Scott Hurteau was a duly sworn parole officer of said defendant New York State Commissioner of Department of Corrections and Community Supervision and acting under the supervision of defendant New York State Commissioner of Department of Corrections and Community Supervision and according to his official duties. He is sued individually.

26. At all times hereinafter mentioned, defendant Washington County District Attorney's Office, is a municipal entity created and authorized under the laws of the State of New York to investigate and prosecute criminal conduct within The County of Washington.

27. At all times hereinafter mentioned, defendant Washington County District Attorney Kevin Kortright was the District Attorney of defendant County of Washington, and responsible for, and the chief architect of, the policies, practices and customs of the defendant Washington County District Attorney's Office as well as responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the assistant district attorney who work in his office. He is sued individually.

28. At all times hereinafter mentioned, defendant Washington County Assistant District Attorney Devin Anderson was an assistant district attorney of defendant

Washington County District Attorney's Office and acting in his capacity as an assistant district attorney for defendant Washington County District Attorney's Office and according to his official duties. He is sued individually.

29. At all times hereinafter mentioned, defendant Washington County Assistant District Attorney Michael Stern was an assistant district attorney of defendant Washington County District Attorney's Office and acting in his capacity as an assistant district attorney for defendant Washington County District Attorney's Office and according to his official duties. He is sued individually.

## NOTICE OF CLAIM

30. That heretofore and within 90 days after the claim sued upon arose, plaintiff Peddie Jenkins caused a notice of claim, in writing, sworn to by plaintiff Peddie Jenkins, to be served upon the defendants named herein, by delivering said Notice of Claim to the clerk and/or employees of the defendants named herein designated to accept service thereof which notices of claim set forth the name and post office address of plaintiff Peddie Jenkins and his attorney, the nature of the claim, the time when, place where and manner in which the claim arose and the items of damage or injuries claimed to have been sustained so far then known. That said notices of claim was prepared and served in accordance with the law as required under General Municipal Law § 50(e).

31. That on May 17, 2013, a hearing was held pursuant to the provisions of section 50-h of the General Municipal Law.

32. That more than 30 days have elapsed since said notice of claim was presented to the defendants named herein and the defendants named herein failed, neglected and refused to make adjustment or payment of the same.

33. That this action is being commenced within one (1) year and ninety (90) days after the cause of action herein accrued, the time prescribed and in accordance with law.

34. That plaintiff Peddie Jenkins has complied with all conditions precedent to maintaining the instant action.

35. That this action falls within one (1) or more of the exceptions as outlined and set forth in CPLR § 1602.

### FACTUAL ALLEGATIONS

36. The defendants named herein, acted individually and collectively as to each other.

37. Prior to January 2012, a duly organized Drug Task Force existed which included, however was not limited to, the defendants named herein.

38. Prior to January 2012, plaintiff Peddie Jenkins had contact with defendants Washington County Sheriff Jeffrey Murphy, Washington County Under Sheriff John Winchell, Washington County Sheriff Deputy Scott Stark, Hudson Falls Police Officer Scott Gillis and Glens Falls Police Officer Peter Casertino, New York State Parole Officer Scott Hurteau and New York State Parole Office Mario Torres on which dates said defendants discriminated against plaintiff Peddie Jenkins based on his race and exhibited racial animus actions towards plaintiff Peddie Jenkins, including however not limited to: referencing plaintiff Peddie Jenkins race and manner of dress; stating plaintiff Peddie Jenkins was nothing but a drug dealer; referring to plaintiff Peddie Jenkins as a "nigger" and "black bastard"; accusing plaintiff Peddie Jenkins, as a result of his race of "…being up here messing around with our white girls…"; telling plaintiff Peddie Jenkins "…we have got your black ass now, you are going down for life…"; and, unlawfully detaining and interrogating plaintiff Peddie Jenkins.

39. From November 2005 to June 2011, plaintiff Peddie Jenkins was under the supervision of defendants New York State Commissioner of Department of Corrections and Community Supervision and New York State Parole Officer Mario Torres and New York State Parole Officer Scott Hurteau.

40. In January 2012, the defendants named herein caused and instigated an investigation of plaintiff Peddie Jenkins.

41. The investigation commenced in January 2012 and was, in part, based upon and/or motivated by the ill feelings and racial animus of the defendants named herein against plaintiff Peddie Jenkins, and based upon their prior feelings, opinions and beliefs about plaintiff Peddie Jenkins including, however not limited to, to wit:

    a) while plaintiff Peddie Jenkins was on parole prior to January 2012, defendant parole officers Torres and Scott Hurteau demonstrated ill feelings toward plaintiff Peddie Jenkins during the period of time defendant parole officers Mario Torres and Scott Hurteau supervised plaintiff Peddie Jenkins's parole supervision, including , however not limited to, the following: refusing to assist plaintiff Peddie Jenkins in a proper and timely fashion; taunting plaintiff Peddie Jenkins ; referring to plaintiff Peddie Jenkins wife as "the bitch"; falsely accusing plaintiff Peddie Jenkins of smoking marijuana; employing racially insensitive nicknames and epithets; directing plaintiff Peddie Jenkins to "go back where you came from"; stating to plaintiff Peddie Jenkins "I don't know how long you are going to last here"; and, telling plaintiff Peddie Jenkins "When we do get you on something, you will be going away for life." and,

    b) defendants Washington County Sheriff Jeffrey Murphy, Washington County Under Sheriff John Winchell, Washington County Sheriff Deputy Scott Stark, Hudson Falls Police Officer Scott Gillis and Glens Falls Detective Peter Casertino, on various dates discriminated against plaintiff Peddie Jenkins based on his race and exhibited racial animus actions towards plaintiff Peddie Jenkins and falsely accused and targeted plaintiff Peddie Jenkins as a drug dealer.

42. In January 2012 the defendants named herein, solicited, importuned and employed confidential informant Steven Lathrop, a person with a known criminal record

and substance abuse history, to cooperate with them upon their promise they would reward him with favorable treatment for the criminal charges he was facing.

43. On or about January 2012, defendant Hudson Falls Police Officer Scott Gillis and assistant district attorney(s) employed by defendant Washington County District Attorney's Office approached the confidential informant Steven Lathrop when he appeared in Hudson Falls Village Court where charges had been filed against him. The Assistant District Attorney for defendant Washington County District Attorney's Office and defendant Hudson Falls Police Officer Scott Gillis then promised confidential informant Steven Lathrop favorable treatment if he would set up plaintiff Peddie Jenkins.

44. On or about January 2012, defendants Hudson Falls Village Police Department, Hudson Falls Police Officer Scott Gillis, Washington County District Attorney's Office and Washington County Assistant District Attorney Devin Anderson entered into a cooperation agreement with confidential informant Steven Lathrop.

45. Despite entering into the cooperation agreement with confidential informant Steven Lathrop, defendants Hudson Falls Village Police Department, Hudson Falls Police Officer Scott Gillis, Washington County District Attorney's Office and Washington County Assistant District Attorney Devin Anderson, and the other defendants name herein, knowingly and intentionally failed to abide by the terms and conditions contained in the cooperation agreement, such that the investigation of plaintiff Peddie Jenkins was compromised and flawed.

46. Despite knowing that the terms and conditions of the cooperation agreement had not been abided by and that the investigation of plaintiff Peddie Jenkins was compromised and flawed, defendants Hudson Falls Village Police Department, Hudson Falls Police Officer Scott Gillis, Washington County District Attorney's Office and

Washington County Assistant District Attorney Devin Anderson, and the other defendants named herein, still proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

47. At all times hereinafter mentioned, the defendants named herein, were aware that confidential informant Steven Lathrop was principally motivated by the favorable treatment being extended to him as opposed to being forthright, reliable and honest, and despite knowing this, the defendants named herein still proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

48. Despite the known protocol for registering a confidential informant, defendant Hudson Falls Police Officer Scott Gillis knowingly and intentionally failed to abide by the established protocol such that the investigation of plaintiff Peddie Jenkins was compromised and flawed. Despite knowing this, defendant Hudson Falls Police Officer Scott Gillis and the other defendants named herein, still proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

49. Despite the known protocol for establishing a recorded set up call between the confidential informant and plaintiff Peddie Jenkins, the defendants named herein knowingly and intentionally failed to abide by the established protocol such that the investigation of plaintiff Peddie Jenkins was compromised and flawed, and thereafter they still proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

50. On February 10, 2012, Washington County Undersheriff John Winchell, Washington County Sheriff's Deputy Scott Stark, Hudson Falls Police Officer Scott Gillis, Hudson Falls Police Officer Scott Moulthrop, City of Glens Falls Police Officer Peter Casertino, City of Glens Falls Police Officer Paul Fretelloso, New York State Parole Officer Mario Torres and New York State Parole Officer Scott Hurteau met at a pre-determined location with the confidential informant for the purpose of conducting a controlled sale of narcotics from plaintiff Peddie Jenkins to confidential informant Steven Lathrop.

51. On February 10, 2012, while at the pre-determined location , Washington County Undersheriff John Winchell, Washington County Sheriff's Deputy Scott Stark, Hudson Falls Police Officer Scott Gillis, Hudson Falls Police Officer Scott Moulthrop, City of Glens Falls Police Officer Peter Casertino, City of Glens Falls Police Officer Paul Fretelloso, New York State Parole Officer Mario Torres and New York State Parole Officer Scott Hurteau took photographs of plaintiff Peddie Jenkins during the time period of the alleged transaction and thereafter falsely stated that plaintiff Peddie Jenkins was the person depicted on a 4-wheeler; that is, the person who was alleged to have sold narcotics to the confidential informant Steven Lathrop.

52. That subsequent to February 10, 2012, defendants Washington County District Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern knew that the person depicted on the 4-wheeler was not plaintiff Peddie Jenkins and still proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

53. On February 10, 2012, while at the pre-determined location , defendants Washington County Undersheriff John Winchell, Washington County Sheriff's Deputy Scott Stark, Hudson Falls Police Officer Scott Gillis, Hudson Falls Police Officer Scott Moulthrop, City of Glens Falls Police Officer Peter Casertino, City of Glens Falls Police Officer Paul Fretelloso, New York State Parole Officer Mario Torres and New York State Parole Officer Scott Hurteau tape recorded, using a Kel-kit, voices of persons present during the time period of the alleged transaction and thereafter falsely stated that plaintiff Peddie Jenkins was the voice of the persons depicted on the tape recording; that is, the person who was alleged to have sold narcotics to the confidential informant Steven Lathrop.

54. That subsequent to February 10, 2012, defendants Washington County District Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern knew that the voice of the persons depicted on the tape recording was not plaintiff Peddie Jenkins and still proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

55. In fact, Hudson Falls Police Officer Scott Gillis testified on cross examination during the trial that plaintiff Peddie Jenkins voice was not on the recording.

56. Prior to trial, defendants Washington County District Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern, represented to defense counsel and the County Court that Plaintiff Peddie Jenkins voice was on the tape recording.

57. Prior to trial, defendants Washington County District Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern, withheld from defense counsel the tape recording which they alleged contained the Plaintiff Peddie Jenkins' voice, despite the filing of motions and directives from the County Court to produce it. During this time period, said defendants intentionally misrepresented to defense counsel that plaintiff Peddie Jenkins voice was on the tape recording. Further, said defendants stated that if plaintiff Peddie Jenkins did not accept the proposed offer of a plea to the charge and sentence of twelve (12) years, the offer would be withdrawn.

58. Prior to the grand jury presentation and throughout the continued prosecution, defendants Washington County District Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern, withheld exculpatory information from the grand jury and defense counsel, including, however not limited to, the fact that the tape recording did not contain the plaintiff Peddie Jenkins' voice, the photograph did not depict plaintiff Peddie Jenkins the be the person on the 4-wheeler that was alleged to have been used during the course of the criminal transaction, and the terms and conditions of the cooperation agreement had not been complied with.

59. On February 10, 2012, defendants Washington County Undersheriff John Winchell, Washington County Sheriff's Deputy Scott Stark, Hudson Falls Police Officer Scott Gillis, Hudson Falls Police Officer Scott Moulthrop, City of Glens Falls Police Officer Peter Casertino, City of Glens Falls Police Officer Paul Fretelloso, New York State Parole Officer Mario Torres and New York State Parole Officer Scott Hurteau drew

or had drawn a sketch of Plaintiff Peddie Jenkins' residence showing the location of a back door of said residence in which they alleged the Plaintiff Peddie Jenkins entered at the time of the alleged criminal transaction while knowing there was no such back door. Defendants did so knowingly, intentionally and maliciously and in furtherance of their conspiracy false accusations and subsequent testimony that plaintiff Peddie Jenkins entered through the back door of his residence and thereafter sold crack cocaine to the confidential informant Steven Lathrop.

60. That subsequent to February 10, 2012, defendants Washington County District Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern knew that the sketch of Plaintiff Peddie Jenkins' residence showing the location of a back door to was not accurate and depicted a door that did not exist, and still proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this exculpatory evidence from the Grand Jury, County Court and plaintiff Peddie Jenkins.

61. On February 10, 2012 defendant Washington County Undersheriff John Winchell weighed the "2 grams" of crack cocaine alleged to have been sold by plaintiff Peddie Jenkins and discovered that the crack cocaine and baggies in which it was wrapped only weighed 1.1 grams.

62. On February 10, 2012, defendant Washington County Sheriff's Deputy Scott Stark prepared a New York State incident report which reflected 2 grams of cocaine was purchased, while knowing that 2 grams had not been seized.

63. Defendants Washington County District Attorney's Office, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District

Attorney Michael Stern, while knowing the New York State incident report falsely reflected 2 grams of cocaine was purchased, thereafter proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

64. Defendants Washington County District Attorney's Office and Washington County Assistant District Attorney Devin Anderson knew that the confidential informant testified falsely before the Grand Jury when he testified plaintiff Peddie Jenkins sold him "2 grams of crack cocaine", however failed to disclose to the Grand Jury that his testimony was false.

65. Defendants Washington County Undersheriff John Winchell and Washington County Assistant District Attorney Devin Anderson intentionally withheld exculpatory evidence from the Grand Jury by tailoring defendant Washington County Undersheriff John Winchell testimony such that he did not disclose to the Grand Jury that the cocaine did not even come close to weighing 2 grams, as was testified to by the confidential informant Steven Lathrop.

66. On March 16, 2012, defendants Washington County Sheriff Jeffrey Murphy, Washington County Sheriff's Deputy Scott Stark and Washington County District Attorney's Office submitted evidence to the New York State Police Crime Lab.

67. On September 7, 2012, the New York State Police Crime Lab provided the defendants named herein with a draft copy of the crime lab report which in part, reflected that the one plastic bag alleged to have contained 1 gram of cocaine only contained .28 grams and that no analysis was performed on the other plastic bag which was alleged to have contained one gram of cocaine. The crime lab report was produced as a result of a RUSH REQUEST made by defendant Washington County District Attorney's Office and

Washington County Assistant District Attorney Devin Anderson. Despite knowing that the crime lab report reflected a weight of less than one third than what is alleged to have been sold, the defendants named herein failed to disclose the exculpatory evidence to County Court and plaintiff Peddie Jenkins and still proceeded with the prosecution of plaintiff Peddie Jenkins.

68. On or about November 15, 2012, Washington County District Attorney's Office and Washington County Assistant District Attorney Michael Stern subpoenaed witnesses from the New York State Police Crime Lab to testify.

69. On or about November 21, 2012, Washington County District Attorney's Office and Washington County Assistant District Attorney Michael Stern forwarded to County Court Judge McKeighan the New York State Police Crime Lab Report without disclosing to him the discrepancies regarding the weight.

70. The photographs taken on or about February 10 depicted the Plaintiff Peddie Jenkins dressed in a blue sweatshirt. On cross examination during the trial defendant Hudson Falls Police Officer Scott Gillis acknowledged that the person in the blue sweatshirt was not involved in the criminal transaction. Despite knowing this, defendant Hudson Falls Police Officer Scott Gillis and other defendants named herein, intentionally, knowingly and maliciously continued to participate in the arrest and prosecution Plaintiff Peddie Jenkins.

71. Defendant Hudson Falls Police Officer Scott Gillis testified that prior to trial he met with defendant Washington County Assistant District Attorney Michael Stern. Upon information and belief, defendant Washington County Assistant District Attorney Michael Stern knew that Plaintiff Peddie Jenkins was the person dressed in the blue sweatshirt and that defendant Hudson Falls Police Officer Scott Gillis was of the opinion

that he was not involved in the criminal transaction. While knowing this, defendant Washington County Assistant District Attorney Michael Stern thereafter proceeded with the arrest and prosecution of plaintiff Peddie Jenkins and, withheld this information from the Grand Jury, County Court and plaintiff Peddie Jenkins.

72. Subsequent to the commencement in January 2012 of the investigation against plaintiff Peddie Jenkins and prior to the Grand Jury presentation, and continuing through the verdict of not guilty, the defendant Washington County District Attorney's Office and its members knew or should have known that the information and evidence against Plaintiff Peddie Jenkins was false, misleading, deceptive, prejudicial, incompetent and incomplete. Despite knowing this, defendants Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Michael Stern deliberately ignored these facts in favor of a speedy and politically expedient trial, based upon their ill motive and racial animus towards plaintiff Peddie Jenkins, and without probable cause to do so.

73. At trial, defendant Washington County Assistant district Attorney Michael Stern, at the conclusion of the People's proof and thereafter after the conclusion of defendant's proof, opposed plaintiff Peddie Jenkins motion to dismiss the charges and continued in his prosecution of plaintiff Peddie Jenkins based upon his ill motive and racial animus toward plaintiff Peddie Jenkins, and without probable cause to do so.

74. Subsequent to January 10, 2012, the defendants named herein, suppressed evidence and exculpatory facts known by them, including evidence and exculpatory facts that would have been known by them had they performed a proper investigation.

75. Prior to the Grand Jury presentment and indictment of plaintiff Peddie Jenkins, the defendants named herein knew that they lacked probable cause to adequately identify

plaintiff Peddie Jenkins as the perpetrator of the alleged crime and lacked probable cause to arrest him.

76. The defendants named herein had ample opportunity to cease the indictment and prosecution of plaintiff Peddie Jenkins in light of the fact they knew there was no probable cause to arrest and prosecute plaintiff Peddie Jenkins.

77. As a result of the investigation commenced in January 2012, the defendants named herein, presented evidence to the Washington County Grand Jury alleging plaintiff Peddie Jenkins sold crack cocaine on or about February 10, 2012.

78. At the Grand Jury proceeding, the defendants named herein were aware that the Grand Jury would be relying on the evidence presented to, and during the Grand Jury proceeding withheld exculpatory evidence and presented evidence that was false, misleading, deceptive, prejudicial, incompetent and incomplete.

79. At the Grand Jury proceeding the defendants named herein, together with witnesses encouraged by them to testify including, however not limited to, confidential informant Steven Lathrop, testified falsely and offered false, misleading, deceptive, prejudicial, incompetent and incomplete information and evidence, and withheld exculpatory evidence, that plaintiff Peddie Jenkins had committed the crime of criminal sale of a controlled substance in the 3rd degree in violation of the § 220.39 of the Penal Law of the State of New York and criminal possession of a controlled substance in the 3rd degree in violation of § 220.16 of the Penal Law of the State of New York. The evidence that was withheld, together with the evidence that was presented included, however was not limited to, the following:

a) failing to disclose there was no evidence implicating that the plaintiff Peddie Jenkins, other than confidential information Steven Lathrop's allegations that plaintiff Peddie Jenkins sold him crack cocaine;

b) failing to disclose they had information and/or grounds to believe that confidential informant Steven Lathrop's account of the alleged criminal activity was unreliable;

c) failing to disclose they never searched the plaintiff Peddie Jenkins residence prior to or after the alleged criminal activity to determine if there was drugs located in it;

d) failing to disclose they never questioned any of the other persons who were present in the residence at the time of the alleged criminal activity, prior to an after the alleged criminal activity;

e) failing to disclose they never took any steps to corroborate confidential informant Steven Lathrop's version of what occurred;

f) falsely stating the plaintiff Peddie Jenkins was the person on a 4-wheeler who sold the crack cocaine to the confidential informant while knowing that the person on the 4-wheeler was not the plaintiff Peddie Jenkins, or withholding such information;

g) falsely stating the plaintiff Peddie Jenkins was the person who entered the back door of plaintiff Peddie Jenkins residence and sold the crack cocaine while knowing there was no back door to the plaintiff Peddie Jenkins residence, or withholding such information;

h) providing a sketch of the plaintiff Peddie Jenkins residence showing the location of a backdoor while knowing there was no backdoor to the plaintiff Peddie Jenkins residence, or withholding such information;

i) falsely stating the plaintiff Peddie Jenkins was the person who entered plaintiff Peddie Jenkins residence and conversed with the informant Steven Lathrop while knowing the plaintiff Peddie Jenkins voice was not on the audio recording of the alleged transaction, or withholding such information;

j) falsely stating the plaintiff Peddie Jenkins went in to plaintiff Peddie Jenkins residence during the time period of the alleged transaction despite

knowing the plaintiff Peddie Jenkins remained outside, or withholding such information;

k) falsely stating confidential informant Steven Lathrop was searched in accordance with proper and accepted procedures, prior to and after the sale, or withholding such information;

l) falsely stating confidential informant Steven Lathrop's vehicle was searched in accordance with proper and accepted procedures, prior to and after the sale, or withholding such information;

m) falsely stating confidential informant Steven Lathrop's provided crack cocaine to them which had been supplied to him by plaintiff Peddie Jenkins;

n) failing to disclose the confidential informant claimed to have purchased "two (2) grams of cocaine for $200.00" when, in fact, only a fraction of a gram of crack cocaine was actually provided by the confidential informant to the defendants named herein;

o) falsely stating a "set up call" was made to plaintiff Peddie Jenkins, or withholding such information;

p) failing to disclose that the proper procedures had not been followed with regards to qualifying the confidential informant Steven Lathrop prior to using him as a confidential informant;

q) failing to disclose the terms and conditions of the cooperation agreement entered into with the confidential informant had not been complied with;

r) failing to disclose that the proper protocol during the investigation including, however not limited to, making "two (2) buys" from the plaintiff Peddie Jenkins had not been complied with;

s) failing to disclose that the proper protocol during the investigation including, however not limited to, recording the "set up call" had not been complied with;

t) failing to disclose that the incident report, arrest report and drug buy reports and other paperwork was inaccurate, incomplete and false;

u) failing to disclose that the proper procedures had not been followed with regards to the preparation of the incident report, arrest report and drug buy reports.

v) by Washington County Undersheriff Winchell improperly, falsely and prejudicially testifying the plaintiff Peddie Jenkins was a suspect and target of the drug task force when he (Undersheriff Winchell) was with Warren County;

w) by Washington County Undersheriff Winchell testifying, in part, to the Grand Jury, **contrary to his sworn testimony during the trial,** that he met the confidential informant at the Hartford School bus barn, he searched the confidential informant at the Hartford School bus barn, the confidential informants vehicle was searched the Hartford School bus barn, and that he attempted to make a control call to the plaintiff Peddie Jenkins at the Hartford School bus barn;

x) by the confidential informant Steven Lathrop testifying to the Grand Jury, **contrary to his sworn testimony during the trial,** the day of the alleged incident he met the police at the Hartford School bus barn, he was searched at the Hartford School bus barn, that he drove his own vehicle to the Hartford School bus barn; they searched his vehicle at the Hartford School bus barn, amd that he walked into the plaintiff Peddie Jenkins residence, at which time plaintiff Peddie Jenkins sold crack cocaine to him;

y) by failing to disclose the confidential informant Steven Lathrop also gave false, perjured and misleading testimony, including, however not limited to, that plaintiff Peddie Jenkins was present when the confidential informant entered the plaintiff Peddie Jenkins residence, the confidential informant had a conversation with the plaintiff Peddie Jenkins in plaintiff Peddie Jenkins residence, the confidential informant was in plaintiff Peddie Jenkins residence for approximately 15 minutes, the plaintiff Peddie Jenkins sold crack cocaine to the confidential informant Steven Lathrop, and the confidential informant gave two grams of crack cocaine to the defendants named herein.

80. The defendants named herein, by presenting false, misleading, deceptive, prejudicial, incompetent and incomplete information and evidence, and withholding exculpatory evidence, to the Grand Jury knew the Grand Jury would not be able to make

a fair and reliable determination as to the existence of probable cause to charge the plaintiff Peddie Jenkins with the crimes for which he was indicted; that is, the defendants deliberately withheld and fabricated evidence in order to deprive plaintiff Peddie Jenkins from a fair and impartial presentation of the evidence to the Grand Jury thereby resulting in his indictment.

81. During the presentation of the evidence to the Grand Jury, the defendants named herein, deliberately, willfully, maliciously and recklessly failed to inform the Grand Jury of the true surrounding facts and circumstances of the charge against the plaintiff Peddie Jenkins so as to cause the indictment of plaintiff Peddie Jenkins.

82. The acts of the defendants named herein of deliberately assembling and marshaling the evidence in such a false and misleading manner impaired the integrity of the Grand Jury proceedings thereby leading to an incompetent indictment.

83. Plaintiff Peddie Jenkins had no knowledge or notice of the proceeding before the Grand Jury at the time it was conducted, did not appear before the Grand Jury and did not have an opportunity to present his testimony and proof to the Grand Jury.

84. In reliance on the evidence and testimony provided by the defendants named herein and by reason of withholding exculpatory evidence as hereinbefore alleged, the Grand Jury on or about June 14, 2010 indicted plaintiff Peddie Jenkins.

85. The indictment was designated as Indictment No. I-081-02012 and was returned to the County Court of The County of Washington, State of New York.

86. The indictment accused plaintiff Peddie Jenkins of the commission of the crimes of criminal sale of a controlled substance in the 3rd degree in violation of § 220.39 of the Penal Law of the State of New York and criminal possession of a controlled substance in the 3rd degree in violation of § 220.16 of the Penal Law of the State of New York.

Attached hereto, marked **Exhibit "A"**, and made a part hereof is a copy of the indictment.

87. As a result of the indictment and malicious prosecution, plaintiff Peddie Jenkins was arrested and arraigned in the County Court of The County of Washington on June 21, 2012 and remanded to the Washington County Jail in lieu of bail in the amount of $100,000.00 cash or $250,000.00 bond.

88. As a result of the indictment and malicious prosecution, plaintiff Peddie Jenkins was handcuffed, strip searched, processed, finger printed and photographed.

89. As a result of the indictment and malicious prosecution, plaintiff Peddie Jenkins was incarcerated from June 21, 2012 to December 6, 2012.

90. While incarcerated, plaintiff Peddie Jenkins was subjected to restraint of his liberty, numerous strip searches and other indignities.

91. While incarcerated, plaintiff Peddie Jenkins contracted mersa and other ailments.

92. As a result of the indictment and malicious prosecution, plaintiff Peddie Jenkins was required to retain counsel to defend him.

93. As a result of the indictment and malicious prosecution, plaintiff Peddie Jenkins was required to appear in County Court, Washington County on numerous dates, while dressed in prison garments.

94. The defendants named herein continued their conspiracy following the filing of the indictment and through the trial of the plaintiff Peddie Jenkins by improperly bolstering the credibility of confidential informant Steven Lathrop's, and by continuing to testifying falsely and offering false, misleading, deceptive, prejudicial, incompetent and incomplete information and evidence, and withholding exculpatory evidence.

95. The defendants named herein further conspired and corroborated in bad faith at trial by offering false and misleading evidence and by withholding exculpatory evidence.

96. Subsequent to the indictment of plaintiff Peddie Jenkins the Washington County District Attorney's Office refused to dismiss the indictment despite knowing that the indictment was founded on false testimony, false, misleading, deceptive, prejudicial, incompetent and incomplete information and evidence, and that exculpatory evidence had been withheld.

97. Subsequent to the indictment and throughout the trial of plaintiff Peddie Jenkins, the defendants named herein, knew there was no probable cause for the continued malicious prosecution.

98. Subsequent to the indictment and throughout the trial of plaintiff Peddie Jenkins, the defendants named herein continued to suppress the truth of what happened.

99. Subsequent to the indictment and throughout the trial of plaintiff Peddie Jenkins, defendants Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant District Attorney Michael Stern refused to discontinue the malicious prosecution of plaintiff Peddie Jenkins unless he agreed to plead guilty to the charge of criminal sale of a controlled substance 3rd in violation of § 220.39 of the Penal Law of the State of New York, a class "B" felony, and be sentenced to a determinate term of twelve (12) years, while advocating as sentence of twenty (20) years to life to the County Court Judge if plaintiff Peddie Jenkins was convicted after trial.

100. Subsequent to the indictment and throughout the trial of plaintiff Peddie Jenkins, defendants Washington County District Attorney Kevin Kortright, Washington County Assistant District Attorney Devin Anderson and Washington County Assistant

District Attorney Michael Stern sought bail in the amount of $100,000.00 cash and $250,000.00 insurance bond which said bail was set by the County Court Judge. Thereafter said defendants refused to consent to a reduction of the bail while knowing that the information and/or evidence initially provided to the Grand Jury and County Court Judge was false, misleading, deceptive, prejudicial, incompetent and incomplete, and that exculpatory evidence was withheld.

101. On December 3, 4, 5, and 6, 2012, a jury trial was held in County Court, Washington County, before the Hon. Kelly S. McKeighan on the charges contained in the indictment.

102. The defendants named herein conspired with each other, together with witnesses called to testify before the Grand Jury and trial of plaintiff Peddie Jenkins, to offer false testimony and provide false, misleading, deceptive, prejudicial, incompetent and incomplete information and evidence, and withhold exculpatory evidence.

103. During the trial, the defendants named herein offered false testimony and evidence which included, however was not limited to, the testimony of Washington County Under Sheriff John Winchell, Washington County Sheriff Deputy Scott Stark, Hudson Falls Police Officer Scott Gillis, Glens Falls Detective Paul Fretelloso and confidential informant Steven Lathrop relating to the time and place the confidential informant was searched; the manner in which the confidential informant was searched; the time and place the confidential informants motor vehicle was searched; the manner in which the confidential informants motor vehicle was searched; the identity of the plaintiff Peddie Jenkins as the perpetrator; the alleged location of the "back door" at plaintiff Peddie Jenkins residence; that plaintiff Peddie Jenkins voice on the audio recording; the presence of plaintiff Peddie Jenkins in plaintiff Peddie Jenkins residence at the time of

the alleged drug transaction; the purported identification of the plaintiff Peddie Jenkins wife at plaintiff Peddie Jenkins residence at the time of the alleged drug transaction; and, that plaintiff Peddie Jenkins had sold crack cocaine to the confidential informant.

104. The defendants named herein where aware the testimony offered by confidential informant Lathrop and Washington County Undersheriff Winchell, including others, at the trial directly contradicted their sworn testimony before the Grand Jury, however withheld this and failed to disclose the same to plaintiff Peddie Jenkins prior to trial and/or to the jurors during the trial.

105. On December 6, 2012 the jury acquitted plaintiff Peddie Jenkins of all charges, he was discharged by the Court and the prosecution was thereby wholly terminated in his favor. Attached hereto, marked **Exhibit "B"**, and made a part hereof, is a copy of the Unified Courts disposition pursuant to CPL § 160.50.

106. From the date of arraignment on or about June 21, 2012 to the date of his acquittal on December 6, 2012, plaintiff Peddie Jenkins refused all plea offers and proposed negotiated dispositions and continued to asset his innocence.

107. At all times herein mentioned the defendants named herein failed to provide proper oversight of its employees; failed to properly train its employees; failed to prescribe rules and regulations necessary to ensure the integrity of the police reports and incident reports; failed to properly supervise its employees; failed to follow prescribe rules and regulations pertaining to the investigation, arrest and prosecution of persons and, failed to prescribe and follow rules and regulations pertaining to the investigation, arrest and prosecution of persons.

108. At all times herein mentioned, defendants, collectively and individually, while acting under the color of state law, engaged in conduct which constituted a custom,

usage, practice, procedure of the rule or respective municipality/authority, which is forbidden by the Constitution of the United States.

109. The actions of the defendants named herein were deliberately, malicious, reckless, intentional, based on racial animus and ill motives towards plaintiff Peddie Jenkins and were made in gross and reckless disregard to plaintiff Peddie Jenkins.

110. In addition to the efforts of the defendants named herein to suppress the truth during the time of the prosecution of plaintiff Peddie Jenkins, the defendants continued to actively conspire to propound the belief that the prosecution of plaintiff Peddie Jenkins was handled appropriately. Overt actions in furtherance of this conspiracy included, however not limited to, public statements made by Washington County Sheriff Jeffrey Murphy that "From everything I've seen, the case was handled appropriately."

111. As a result of the actions of the defendants named herein, plaintiff Peddie Jenkins 2001 Dodge Ram truck was unlawfully seized, and secured and damaged.

112. As a result of the actions of the defendants named herein, plaintiff Peddie Jenkins business and livelihood was interrupted and shut down.

113. As a result of the foregoing, plaintiff Peddie Jenkins suffered loss of his liberty, loss of his employment, loss wages, extra ordinary expenses as a result of his incarceration, serious and permanent physical and emotional injuries, pain and suffering, mental anguish, humiliation and embarrassment and loss of his reputation.

114. As a result of the foregoing plaintiff Peddie Jenkins suffered, and will suffer in the future actual damages.

115. As a result of the foregoing plaintiff Peddie Jenkins incurred attorney fees for the defense of the investigation and malicious prosecution by him of the defendants named herein.

## FIRST CLAIM

**(Violation of Rights Secured by 42 U.S.C. § 1981 and the
Thirteenth Amendment of the United States Constitution)**

116. Plaintiff Peddie Jenkins incorporates by reference the allegations set forth in
Paragraphs 1-115 as if fully set forth herein.

117. The conduct and actions of the defendants named herein, acting under color of
state law, in subjecting plaintiff Peddie Jenkins, who is an African-American, to unlawful
arrest, wrongful confinement and imprisonment, unlawful strip searches, malicious
prosecution a, abuse of process, wrongful conviction and a conspiracy to cover-up the
truth, was motivated by racial animus, was done intentionally, maliciously and/or with a
reckless disregard for the natural and probable consequences of their acts, was done
without lawful justification, and was designed to and did cause a serious bodily, mental
and emotional harm, pain and suffering in violation of plaintiff Peddie Jenkins
Constitutional rights as guaranteed under 42 U.S.C. § 1981 and the Fourth and Thirteenth
Amendments of the United States Constitution.

## SECOND CLAIM
**(Violation of Rights Secured by 42 U.S.C. § 1983 and the
Fourteenth Amendment to the United States Constitution)**

118. Plaintiff Peddie Jenkins incorporates by reference the allegations set forth in
Paragraphs 1-115 as if fully set forth herein.

119. The conducts and actions of the defendants named herein acting under color of
law, in subjecting plaintiff Peddie Jenkins, who is an African-American, to unlawful
arrest, wrongful confinement & imprisonment, unlawful strip searches, unlawful assault
and battery, malicious prosecution, abuse of process and a conspiracy to cover-up the

truth, was motivated by racial animus, was done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause specific and serious bodily, mental and emotional harm, pain and suffering in the violation of plaintiff Peddie Jenkins' Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### THIRD CLAIM
#### (Violation of Rights Secured by 42 U.S.C. § 1983 and § 1985 and Fourteenth Amendment to the United States Constitution)

120.  Plaintiff Peddie Jenkins incorporates by reference the allegations set forth in Paragraphs 1-115 as if fully set forth herein.

121.  The conducts and actions of the defendants named herein together, and under color of law, reached an understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive plaintiff Peddie Jenkins of his Constitutional rights, and did deprive plaintiff Peddie Jenkins of said rights, including his right to a fair trial and to be free from excessive force, unnecessary force, unreasonable arrest and seizure, from wrongful confinement, imprisonment, conviction, and from malicious prosecution and plaintiff Peddie Jenkins right to access to the Courts, as protected by the First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Because said actions were done with the knowledge and purpose of depriving plaintiff Peddie Jenkins, who is an African-American, of the equal protection of the laws and/or of equal privileges and immunities under the law, and with racial animus toward the plaintiff Peddie Jenkins, they also

deprived plaintiff Peddie Jenkins of his right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. § 1983 and § 1985.

122.    In furtherance of this conspiracy, the defendants named herein committed the overt acts , in part as set forth above, including but not limited to, the wrongful arrest, imprisonment and prosecution of plaintiff Peddie Jenkins; manufacture by the methods articulated above of knowingly false inculpatory evidence against plaintiff Peddie Jenkins; the suppression of exonerating exculpatory evidence; failure to investigate the evidence and information provided by confidential informant Steven Lathrop; failure to investigate who was on the four –wheeler either at the time the observations were initially alleged to have been made or after it became known that plaintiff Peddie Jenkins was not the person on the four – wheeler; failure to investigate the existence of a "back door" to the residence of plaintiff Peddie Jenkins, either at the time the alleged observation was made or after it became known that there was no "back door"; failure to investigate the quantity of the cocaine alleged to have been sold by plaintiff Peddie Jenkins, either at the time it was received or after it became known that the amount alleged to have been sold was only a small fraction of that that was turned over the defendants; the failure to review the kel kit audio tape, either at the time it was received or after it became known that plaintiff Peddie Jenkins voice was not on it; the failure to follow the terms and conditions entered into with the confidential informant; the making of known misstatements and presentation of knowingly false and incomplete evidence, the withholding of exculpatory evidence to plaintiff Peddie Jenkins, judges, grand jurors and petit jurors;  and, the filing of false and incomplete statements and reports.

123.  Said conspiracies and overt acts were continuing in nature, and cause plaintiff Peddie Jenkins constitutional violations and injuries, pain, suffering, fear, mental

anguish, incarceration, conviction, imprisonment, humiliation, defamation of character and reputation, and loss of freedom, companionship, and income, as set forth more fully above.

**FOURTH CLAIM**
**(42 U.S.C. § 1983 Monell Claim against the County of Washington and Washington County Sheriff's Department))**

124.  Plaintiff Peddie Jenkins incorporated by reference the allegation set forth in paragraphs 1-115 as if fully set forth herein.

125.  Defendant Washington County Sheriff Jeffrey Murphy is, by operation of State law and as a matter of fact, the final decision maker with regard to the investigative, arrest, custodial, administrative acts, omissions, and decisions which he made or participated in, as alleged above.

126.  These acts by defendant Washington County Sheriff Jeffrey Murphy, directly and proximately caused constitutional violations and injury to plaintiff Peddie Jenkins, and are directly chargeable to the defendant County of Washington because defendant Washington County Sheriff Jeffrey Murphy status as final decision maker with respect to matters involving the Washington County Sheriff's Department.

127. Additionally, and/or alternatively, on information and belief, the County of Washington, through its Police Department, including defendant Washington County Sheriff Jeffrey Murphy, had in effect, both before and at the time of the events alleged in this complaint, several interrelated de facto policies, practices and customs, including inter alia,

        a)  A policy, practice and custom of suppressing, destroying or otherwise secreting from criminal defendants exculpatory or exonerating evidence, motivated by ill motive and racial animus ; and,

b) A policy, practice and customs of failing to properly train or supervise officers in the proper techniques of investigating serious crimes, particularly where juveniles were involved, or to properly discipline officers who violate the Constitution or law, or otherwise transgress the rights of criminal suspects during their investigations.

128.  These interrelated policies, practices and customs, separately and/or together, were implemented with deliberate indifferences, and were a direct and proximate cause of plaintiff Peddie Jenkins Constitutional violations and injuries, as set forth above.

**FIFTH CLAIM**
**(42 U.S.C. § 1983 Monell Claim against the Village of Hudson Falls and Hudson Falls Village Police Department)**

129.  Plaintiff Peddie Jenkins incorporated by reference the allegation set forth in paragraphs 1-115 as if fully set forth herein.

130.  Defendant Hudson Falls Police Chief Randy Diamond, as Police Chief for Village of Hudson Falls, is, by operation of State law and as a matter of fact, the final decision maker with regard to the investigative, arrest, custodial, administrative acts, omissions, and decisions which he made or participated in, as alleged above.

131.  These acts by defendant Hudson Falls Police Chief Randy Diamond, directly and proximately caused constitutional violations and injury to plaintiff Peddie Jenkins, and are directly chargeable to the defendant Village of Hudson Falls because defendant Hudson Falls Police Chief Randy Diamond status as final decision maker with respect to matters involving the Village of Hudson Falls Police Department.

132.  Additionally, and/or alternatively, on information and belief, the Village of Hudson Falls through its Police Department, including defendant Hudson Falls Police Chief Randy Diamond, had in effect, both before and at the time of the events alleged in

this complaint, several interrelated de facto policies, practices and customs, including inter alia,

   a) A policy, practice and custom of suppressing, destroying or otherwise secreting from criminal defendants exculpatory or exonerating evidence motivated by ill motive and racial animus; and,

   b) A policy, practice and customs of failing to properly train or supervise officers in the proper techniques of investigating serious crimes, particularly where juveniles were involved, or to properly discipline officers who violate the Constitution or law, or otherwise transgress the rights of criminal suspects during their investigations.

133. These interrelated policies, practices and customs, separately and/or together, were implemented with deliberate indifferences, and were a direct and proximate cause of plaintiff Peddie Jenkins Constitutional violations and injuries, as set forth above.

## SIXTH CLAIM
### (42 U.S.C. § 1983 Monell Claim against the City of Glens Falls and Glens Falls City Police Department)

134. Plaintiff Peddie Jenkins incorporated by reference the allegation set forth in paragraphs 1-115 as if fully set forth herein.

135. Defendant Glens Falls Police Chief William Valenza, as Police Chief for City of Glens Falls, is, by operation of State law and as a matter of fact, the final decision maker with regard to the investigative, arrest, custodial, administrative acts, omissions, and decisions which he made or participated in, as alleged above.

136. These acts by defendant Glens Falls Police Chief William Valenza, directly and proximately caused constitutional violations and injury to plaintiff Peddie Jenkins, and are directly chargeable to the defendant City of Glens Falls because defendant Glens Falls Police Chief William Valenza status as final decision maker with respect to matters involving the City of Glens Falls Police Department.

137.     Additionally, and/or alternatively, on information and belief, the City of Glens Falls through its Police Department including defendant Glens Falls Police Chief William Valenza, had in effect, both before and at the time of the events alleged in this complaint, several interrelated de facto policies, practices and customs, including inter alia,

a) A policy, practice and custom of suppressing, destroying or otherwise secreting from criminal defendants exculpatory or exonerating evidence, motivated by ill motive and racial animus; and,

b) A policy, practice and customs of failing to properly train or supervise officers in the proper techniques of investigating serious crimes, particularly where juveniles were involved, or to properly discipline officers who violate the Constitution or law, or otherwise transgress the rights of criminal suspects during their investigations.

138. These interrelated policies, practices and customs, separately and/or together, were implemented with deliberate indifferences, and were a direct and proximate cause of plaintiff Peddie Jenkins Constitutional violations and injuries, as set forth above.

### SEVENTH CLAIM
### (42 U.S.C. § 1983 Monell Claim against the
### Washington County District Attorney's Office)

139. Plaintiff Peddie Jenkins incorporated by reference the allegation set forth in paragraphs 1-115 as if fully set forth herein.

140. Defendant Washington County District Attorney Kevin Kortright, as District Attorney of the Washington County District Attorney's Office is, by operation of State law and as a matter of fact, the final decision maker with regard to the investigative, arrest, indictment, trial, custodial, administrative acts, omissions, and decisions which he made or participated in, as alleged above.

141. The Washington County District Attorney's Office itself, also had in effect, both before and at the time of the events alleged in this complaint, several interrelated de facto policies, practices and customs, including, inter alia,

   a) A policy, practice and customs of suppressing, destroying or otherwise secreting from criminal defendants exculpatory or exonerating evidence; and,

   b) A policy, practice and customs of failing to properly train or supervise assistant district attorney's and investigators in the proper techniques of investigating serious crimes, particularly where juveniles were involved, or to properly discipline officers and investigators who violate the Constitution or law, or otherwise transgress the rights of criminal suspects during their investigations.

142. These interrelated policies, practice and customs, separately and/or together, were implemented with deliberate indifference, and were a direct and proximate cause of plaintiff Peddie Jenkins Constitutional violations and injuries, as set forth above.

## EIGHTH CLAIM
### (Violations of Rights under State Law)

143. Plaintiff Peddie Jenkins incorporated by reference the allegation set forth in paragraphs 1-115 as if fully set forth herein.

144. By the actions described above, each and all of the defendants, jointly and severally, have committed the following wrongful acts against plaintiff Peddie Jenkins, which are tortuous under the laws of the State of New York:

   a) While acting either individually or in concert, by causing the false arrest of Plaintiff Peddie Jenkins, without probable cause;

   b) While acting either individually or in concert, by causing the malicious prosecution of Plaintiff Peddie Jenkins, with malice, and without justification or probable cause, by commencing and continuing the criminal proceedings against Plaintiff Peddie Jenkins, after which the criminal proceedings were terminated in favor of Plaintiff Peddie Jenkins;

c) While acting either individually or in concert, by causing abuse of process through the misuse or perversion of the legal process against Plaintiff Peddie Jenkins by subverting the legal process based upon improper motive to cause harm and detriment to Plaintiff Peddie Jenkins, as a result of which Plaintiff Peddie Jenkins was arrested, incarcerated and suffered great harm;

d) While acting either individually or in concert, by causing assault and battery of Plaintiff Peddie Jenkins by seizing, restraining, handcuffing, strip searching, fingerprinting and confining the Plaintiff Peddie Jenkins without lawful justification;

e) While acting either individually or in concert, by causing the wrongful confinement and false imprisonment of Plaintiff Peddie Jenkins by unlawfully arresting, detaining and incarcerating the Plaintiff Peddie Jenkins against his consent and without lawful basis or probable cause;

f) While acting either individually or in concert, engaged in a negligent course of conduct thereby causing injury to plaintiff Peddie Jenkins;

g) While acting either individually or in concert, intentionally inflicting emotional distress upon plaintiff Peddie Jenkins, in that the defendants intended to and did cause plaintiff Peddie Jenkins severe emotional distress, and the defendant's acts were intentional, willful, outrageous, reckless such that said acts evidenced conduct utterly unacceptable in a civilized society;

h) Negligent hiring, screening, retention, supervision and training of its employees by the defendant Commissioner of Department of Corrections and Community Supervision;

i) Negligent hiring, screening, retention, supervision and training of its employees by the defendants County of Washington and the Washington County Sheriff's Department;

j) Negligent hiring, screening, retention, supervision and training of its employees by the defendants Village of Hudson Falls and the Village of Hudson Falls Police Department;

k) Negligent hiring, screening, retention, supervision and training of its employees by the defendants City of Glens Falls and the Glens Falls Police Department;

l)  Negligent hiring, screening, retention, supervision and training of its employees by the defendants Washington County District Attorney's Office and the County of Washington;

m)  While acting either individually or in concert, engaging in a conspiracy by the defendants named herein to commit all of the above acts; and,

n)  While acting either individually or in concert, violating the rights otherwise guaranteed to plaintiff Peddie Jenkins under the laws and Constitution of the State of New York.

145. The foregoing acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff Peddie Jenkins and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

WHEREFORE, plaintiff prays that this Court grant judgment to him jointly and severally against all of the defendants, as follows:

A.  Compensatory damages in the amount of $5,000,000.00;

B.  Punitive damages in the amount of $5,000,000.00;

C.  Pursuant to § 42 U.S.C 1988 attorney fees and cost involved incurred in maintaining this action;

D.  Such other and further relief as this Court deems just and proper.


Dated: January 16, 2014

William E. Montgomery, III
Federal Bar #: 104038
*Attorney for Plaintiff*
130 Maple Street, P.O. Box 228
Glens Falls, New York 12801
Telephone: (518) 798-6885
Fax: (518) 798-5974
Email: info@billmontgomerylaw.com



## THE PEOPLE OF THE STATE OF NEW YORK

-against-

Peddie N. Jenkins,

*Defendant.*

_____

## INDICTMENT NO. I-081-2012

### COUNT ONE

The Grand Jury of the County of Washington, by this Indictment, accuses Defendant Peddie Jenkins, of the crime of Criminal Sale of a Controlled Substance Third Degree, a class B felony, in violation of §220.39 (1) of the Penal Law of the State of New York, committed as follows:

> Defendant Peddie M. Jenkins, on or about February 10, 2012, in the Town of Granville, Washington County, New York, did knowingly and unlawfully sell a narcotic drug, to wit: Cocaine

### COUNT TWO

The Grand Jury of the County of Washington, by this Indictment, accuses Defendant Peddie Jenkins, of the crime of Criminal Possession of a Controlled Substance Third Degree, a class B felony, in violation of §220.16 (1) of the Penal Law of the State of New York, committed as follows:

> Defendant Peddie M. Jenkins, on or about February 10, 2012, in the Town of Granville, Washington County, New York, did knowingly and unlawfully possess a narcotic drug, Cocaine, with intent to sell the same.

Dated this 14 day of June, 2012, at Fort Edward, Washington County, New York.

_____          _____
Grand Jury Deputy Foreperson              Devin J. Anderson
                                          Assistant District Attorney

Exhibit "A"



EXHIBIT H

# SUPERIOR COURT CRIMINAL DISPOSITION REPORT (UCS-540A)
## WASHINGTON COUNTY     COUNTY COURT

```
SERIAL #96676044      SEX: M    RACE: B    ETH: N    DEFT FEL STATUS:
DEF LNAME/F/M:JENKINS           PEDDIE      N  IND/SCI#:I-081-2012      1
DEF ADDRESS: 322 BLOOD ST GRANVILLE, NY
501#:65523022Q               NYSID #:07398367Y   DOB:01XXX-1977
AKA:                         ARST DT:06-21-2012  ARN DT:06-21-2012 C TYPE:RE
-----------------------------------------------------------------------------
GJ ACTION:IND                GJ DATE:06-14-2012   TRANS TO:
-----------------------------------------------------------------------------
INT DIS DT:06-14-2012   CODE:WO     INT DIS DT:06-21-2012    CODE:ROW
INT DIS DT:             CODE:       INT DIS DT:              CODE:
INT DIS DT:             CODE:       INT DIS DT:              CODE:
-----------------------------------------------------------------------------
C: PL-220.39-01       -BF--N-1     DESC: 3-CSCS-3RD:NARCOTIC DRUG
RED:                               DESC:
D DT:12-06-2012D CODE:ACQ    ACD        COV BY:          R CT:
S DT:       S CODE:                     FINE:     .00    PAID:
PROB:       CUST/TIME:                  YO:       DR L:   TIME:
-----------------------------------------------------------------------------
C: PL-220.16-01       -BF--N-1     DESC: 3-CRIM POSS NARCO DRUG INT/
RED:                               DESC:
D DT:12-06-2012D CODE:ACQ    ACD        COV BY:          R CT:
S DT:       S CODE:                     FINE:     .00    PAID:
PROB:       CUST/TIME:                  YO:       DR L:   TIME:
-----------------------------------------------------------------------------
C:                                 DESC:
RED:                               DESC:
D DT:       D CODE:          ACD        COV BY:          R CT:
S DT:       S CODE:                     FINE:     .00    PAID:
PROB:       CUST/TIME:                  YO:       DR L:   TIME:
-----------------------------------------------------------------------------
C:                                 DESC:
RED:                               DESC:
D DT:       D CODE:          ACD        COV BY:          R CT:
S DT:       S CODE:                     FINE:     .00    PAID:
PROB:       CUST/TIME:                  YO:       DR L:   TIME:
-----------------------------------------------------------------------------
C:                                 DESC:
RED:                               DESC:
D DT:       D CODE:          ACD        COV BY:          R CT:
S DT:       S CODE:                     FINE:     .00    PAID:
PROB:       CUST/TIME:                  YO:       DR L:   TIME:
-----------------------------------------------------------------------------
SEAL ORDER:    ATTY/DEFT:   WILLIAM E. MONTGOMERY,III ESQ.
               ADDRESS:     12 PINE STREET
               CITY/ST/ZIP: GLENS FALLS, N. Y.      12801-
               SEALED CPL:  160.50    SEALED DATE: 12-06-2012 ORDERED BY: KSM
-----------------------------------------------------------------------------
SURCHARGE:    .00  SURCHARGE STATUS:    CVAF:    .00  REST:       .00
-----------------------------------------------------------------------------
REMARKS:  ACQUITTAL              LCT #:

FAM OFF:          REL TO COMP:             REL TO VICT:
-----------------------------------------------------------------------------
BAIL SET:06-21-2012  AMT:100K250  TYPE:C/B   POSTED:        REL STATUS:JAI
CONT. SHEET?
```