UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PEDDIE JENKINS,

                Plaintiff,

                    **Civil Case No.   1:14-CV-0064**
-against-                            **(GTS/RFT)**

THE COUNTY OF WASHINGTON; WASHINGTON COUNTY
SHERIFF'S DEPARTMENT; WASHINGTON COUNTY SHERIFF
JEFFEREY MURPHY, individually; WASHINGTON COUNTY
UNDERSHERIFF JOHN WINCHELL, individually; WASHINGTON
COUNTY SHERIFF'S DEPUTY SCOTT STARK, individually;
VILLAGE OF HUDSON FALLS; FALLS POLICE DEPARTMENT;
HUDSON FALLS POLICE CHIEF RANDY DIAMOND, individually;
HUDSON FALLS POLICE OFFICER SCOTT GILLIS, individually;
HUDSON FALLS POLICE OFFICER SCOTT MOULTHROP,
individually; CITY OF GLENS FALLS; CITY OF GLENS FALLS
POLICE DEPARTMENT; GLENS FALLS POLICE CHIEF WILLIAM
VALENZA, Individually; GLENS FALLS POLICE OFFICER PETER
CASERTINO, individually; GLENS FALLS POLICE OFFICER PAUL
FRETTELOSO, individually; NEW YORK STATE COMMISSIONER
OF DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION; NEW YORK STATE PAROLE OFFICER SCOTT
HURTEAU, individually; WASHINGTON COUNTY DISTRICT
ATTORNEY'S OFFICE; WASHINGTON COUNTY DISTRICT
ATTORNEY KEVIN KORTRIGHT, Individually; WASHINGTON
COUNTY ASSISTANT DISTRICT ATTORNEY DEVIN ANDERSON,
individually; and, WASHINGTON COUNTY DISTRICT ATTORNEY
MICHAEL STERN, individually.

                Defendants.

---

## MEMORANDUM OF LAW
### IN SUPPORT OF WASHINGTON COUNTY DEFENDANTS'
### MOTION TO DISMISS PURSUANT TO FRCP 12(b)

---

                    LEMIRE, JOHNSON & HIGGINS, LLC
                    2534 Route 9, P.O. Box 2485
                    Malta, New York   12020
                    Tel:    518-899-5700

Of Counsel:

Gregg T. Johnson, Esq.
April J. Laws, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTS ALLEGED IN PLAINTIFF'S COMPLAINT
WHICH COMPEL DISMISSAL OF PLAINTIFF'S CLAIMS
AGAINST THE COUNTY DEFENDANTS ...............................................................2

STANDARD OF REVIEW UNDER FRCP 12(b).......................................................4

POINT I -   DEFENDANTS KORTRIGHT, ANDERSON AND STERN ARE IMMUNE
            FROM SUIT UNDER THE DOCTRINE OF PROSECUTORIAL IMMUNITY..5

POINT II -  DEFENDANTS WINCHELL AND STARK ARE
            ABSOLUTELY IMMUNE FROM SUIT ..............................................9

POINT III - PLAINTIFF'S COMPLAINT FAILS TO STATE
            PLAUSIBLE §§ 1981, 1983 AND 1985 CLAIMS
            AGAINST COUNTY DEFENDANTS ...............................................10

            A.   42 U.S.C. §§ 1981 and 1985 .......................................................11

                 i.    § 1981...................................................................................11

                 ii.   § 1985...................................................................................13

                 iii.  42 U.S.C. § 1983..................................................................16

POINT IV -  PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM
            FOR MUNICIPAL LIABILITY AS AGAINST THE COUNTY,
            THE WCSD OR THE WCAD..........................................................20

POINT V -   INDIVIDUAL DEFENDANTS MURPHY, WINCHELL, STARK,
            KORTRIGHT, ANDERSON AND STERN ARE ENTITLED
            TO QUALIFIED IMMUNITY ........................................................22

CONCLUSION..........................................................................................................24

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009).......................................................................................4, 5, 16

*Barker v. Wingo,*
407 U.S. 514 (1972)...................................................................................................11

*Bazile v. City of New York Dep't of Educ.,*
2013 U.S. Dist. LEXIS 96896....................................................................................20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................................................................16

*Boddie v. Schnieder,*
105 F.3d 857 (2d Cir. 1997).......................................................................................15

*Brown v. City of New York*
2013 U.S. Dist. LEXIS 89955.....................................................................................20

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993).....................................................................................................6

*Carnegie Mellon University v. Cohill,*
484 U.S. 343 (1988)...................................................................................................11

*Ciambriello v. Cnty. of Nassau,*
292 F.3d 307 (2d Cir. 2002).......................................................................................15

*Cleavinger v. Saxner,*
474 U.S. 193 (1985).....................................................................................................8

*Conn. ex rel. Blumenthal v. Crotty,*
346 F.3d 84 (2d Cir. 2003).........................................................................................23

*Connick v. Thompson*
131 S. Ct. 1350 ([2011).............................................................................................21

*Coollick v. Hughes,*
699 F.3d 211 (2d Cir. Conn. 2012).............................................................................23

*Crawford-El v. Britton,*
523 U.S. 574 (1998)..............................................................................................23, 24

*Dartmouth Review v. Dartmouth Coll.*,
    889 F.2d 13 (1st Cir. 1989) ................................................................................12, 13

*Davey v. Jones*,
    2007 U.S. Dist. LEXIS 35965 (S.D.N.Y.2007) ....................................................17

*Dove v. Fordham Univ.*,
    56 F. Supp. 2d 330 (S.D.N.Y. 1999) ....................................................................13

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ..............................................................................................11

*Forrester v. White*,
    484 U.S. 219 (1988) ................................................................................................8

*Fox v. County of Yates*,
    2010 U.S. Dist. LEXIS 120110 ............................................................................17

*Garg v. Albany Indus. Dev. Agency*,
    899 F. Supp. 961 (N.D.N.Y. 1995), *aff'd mem.*, 104 F.3d 351 (2d Cir. 1996) ........................12

*General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
    458 U.S. 375 (1982) ..............................................................................................12

*Imbler v. Pachtman*,
    424 U.S. 409 (1976) ................................................................................................6

*Jaegly v. Couch*,
    439 F.3d 149 (2d Cir. 2006) ..................................................................................19

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
    921 F. Supp. 2d 197 (S.D.N.Y. 2013) ..................................................................15

*Kalina v. Fletcher*,
    522 U.S. 118 (1997) ................................................................................................6

*Kelsey v. Schoharie County*,
    567 F.3d 54 (2d Cir. 2009) ....................................................................................22

*Lawlor v. Connelly*,
    471 Fed.Appx. 64 (2d Cir. 2012) ............................................................................7

*Linda R. S. v. Richard D.*,
    410 U.S. 614 (1973) ................................................................................................6

*Mian v. Donaldson Lufkin & Jenrette Sec. Corp.*,
    7 F.3d 1085 (2d Cir. 1993) ....................................................................................11

*Monell v. Dep't of Soc. Serv. of New York,*
    436 U.S. 658, 98 S. Ct. 2018 (1978)................................................................20

*Otor, S.A. v. Credit Lyonnais, S.A.,*
    2006 U.S. Dist. LEXIS 64885 ......................................................................17

*Pangburn v. Clubertson,*
    200 F.3d 65 (2d Cir. 1999)............................................................................15

*Pearson v. Callahan*
    555 U.S. 223 ([2009) ..................................................................................22

*Phelps v. Kapnolas,*
    308 F.3d 180 (2d Cir. 2002)............................................................................4

*Pitchell v. Callan,*
    13 F.3d 545 (2d Cir. 1994)............................................................................17

*Rehberg v. Paulk,*
    132 S. Ct. 1497 (2012).....................................................................................9

*Saucier v. Katz,*
    533 U.S. 194 (2001)........................................................................................22

*Schloss v. Bouse,*
    876 F.2d 287 (2d Cir. 1989)........................................................................8, 9

*Segal v. City of New York,*
    459 F.3d 207 (2d Cir. 2006).........................................................................20

*Serbalik v. Gray,*
    24 F.Supp.2d 127 (N.D.N.Y. 1998)..............................................................17

*Stansbury v. Wertman,*
    721 F.3d 84 (2d Cir. June 26, 2013) ........................................................17, 19

*Temple of the Lost Sheep, Inc. v. Abrams,*
    930 F.2d 178 (2d Cir. 1991).........................................................................16

*Tennenbaum v. Williams,*
    193 F.3d 581 (2d Cir. 1999)......................................................................22, 24

*Tilton v. Richardson,*
    6 F.3d 683 (10th Cir. 1993) .........................................................................14

*United States v. Rubin,*
    844 F.2d 979 (2d Cir. 1988)..........................................................................15

*Valenti v. Massapequa Union Free Sch. Dist.,*
    2010 U.S. Dist. LEXIS 10076 ............................................................................5

*Van de Kamp v. Goldstein,*
    555 U.S. 335 (2009).....................................................................................7, 8

*Waldron v. Rotzler,*
    862 F. Supp. 763 (N.D.N.Y 1994) ..........................................................14, 17

*Warney v. Monroe County,*
    587 F.3d 113 (2d Cir. 2009)...........................................................................6

*Webb v. Goord,*
    340 F.3d 105 (2d Cir. 2003)..........................................................................15

*Young v. County of Fulton,*
    160 F.3d 899 (2d Cir. 1998)..........................................................................23

*Zherka v. City of New York,*
    459 Fed. Appx. 10 (2d Cir. 2012)..................................................................20

**STATUTES**

28 U.S.C. §1367(c)(3)...........................................................................................11

42 U.S.C. § 1981.....................................................................................10, 11, 12, 13

42 U.S.C. § 1983.......................................................................................... passim

42 U.S.C. § 1985...............................................................................10, 13, 14, 16

42 U.S.C. §1985(3)...........................................................................................14, 15

F.R.C.P. Rule 12(b)..............................................................................................4

## PRELIMINARY STATEMENT

Defendants, County of Washington (hereinafter referred to as "County"), Washington County Sheriff's Department (hereinafter referred to as "WCSD"), Washington County Sheriff Jeffery Murphy (hereinafter referred to as "Murphy"), Washington County Undersheriff John Winchell (hereinafter referred to as "Winchell"), Washington County Sheriff's Deputy Scott Stark (hereinafter referred to as "Stark"), Washington County District Attorney's Office (hereinafter referred to as "WCDA"), Washington County District Attorney Kevin Kortright (hereinafter referred to as "Kortright"), Washington County Assistant District Attorney Devin Anderson (hereinafter referred to as "Anderson"), Washington County Assistant District Attorney Michael Stern (hereinafter referred to as "Stern"), and all defendants referenced herein to be collectively referred to as "County Defendants" for purposes of this motion, by and through their counsel (Lemire, Johnson & Higgins, LLC), submit this memorandum in support of the County Defendants' Rule 12(b) motion to dismiss Plaintiff's Complaint (Dkt. # 1) in its entirety, as against County Defendants.

Plaintiff, Peddie Jenkins, filed his Complaint on January 22, 2014, advancing the following claims as against the County Defendants: 1) alleged violations of Plaintiff's rights pursuant to 42 U.S.C. §§ 1981, 1983 and § 1985, as well as alleging violations of the First, Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments (many of which are nonsensical in light of the pleading); 2) asserting a Monell Claim as against the County, the WCSD and the WCDA; and 3) violations of unspecified state laws against County Defendants, *inter alia*, by making general allegations of false arrest and malicious prosecution against all Defendants.

In support of his §§ 1981, 1983 and 1985 claims, Plaintiff generally alleges that all named defendants collectively conspired with racial animus and "without lawful justification"

(Dkt. No. 1, ¶¶116-123) and, *inter alia*, arrested, charged and prosecuted Plaintiff for the sale of cocaine to a confidential informant (hereinafter referred to as "CI").   Specifically as to the County Defendants, Plaintiff claims that unspecified and unidentified collective acts, policies and/or practices proximately caused the violations alleged in Plaintiff's Complaint (Dkt. No. 1, ¶¶124-128; 139-142).  Finally, Plaintiff alleges that all Defendants "jointly and severally...while acting individually or in concert" committed the state torts of false arrest, malicious prosecution, assault and battery, false imprisonment, negligence, as well as negligent, hiring, supervision and retention of employees (Dkt. No. 1, ¶¶143-145).

While the Complaint is vast and contains many generalized and conclusory allegations that parrot the elements of some claims, the Complaint fails to advance sufficient factual allegations against County Defendants, thus requiring dismissal.  First, Plaintiff's professionally-drafted Complaint fails to include factual allegations which are legally sufficient to support Plaintiff's §§ 1981, 1983 and 1985 claims against County Defendants, as well as Plaintiff's pendent state law tort claims.   Second, Plaintiff has failed to identify a municipal policy or custom by the County which violated his constitutional rights.   Therefore, as a matter of law, Plaintiff's Complaint must be dismissed in their entirely as against the County Defendants.

## FACTS ALLEGED IN PLAINTIFF'S COMPLAINT
## WHICH COMPEL DISMISSAL OF PLAINTIFF'S CLAIMS
## AGAINST THE COUNTY DEFENDANTS

Even though Plaintiff's counsel represented Plaintiff in the criminal action, the Complaint is devoid of necessary information describing the specific actions of all of the Defendants. Plaintiff's Complaint attempts to support his claims that all Defendants acted with racial animus by generally alleging, but not specifying which Defendants in particular, he claims uttered racial epithets (Dkt. No. 1, ¶38).  What is clear from the wording of the Complaint is that Plaintiff has

alleged that his purported claim of racial animus is limited to the law enforcement officers, and not directed at the individually named WCDA Defendants (Dkt. No. 1, generally). As to the law enforcement Defendants, Plaintiff's Complaint offers no evidence in support of his claims that: 1) the alleged epithets were related to any constitutional deprivation; or 2) that any alleged (or perceived) racial animus was the basis for any "state action" by either the law enforcement officers and/or the prosecutors (*Id.*). While allegations of racial epithets are always provocative, Plaintiff's reckless accusations of such remarks made years earlier and Plaintiff's opinion about who is a bigot are simply not sufficient to state a constitutional claim against experienced professional law enforcement officials who arrested Plaintiff after a Grand Jury indicted him and a local court issued an arrest warrant.

Plaintiff's Complaint does admit, however, the following facts that compel dismissal of County Defendants, as follows:

- That the information relating to the drug buy leading to Plaintiff's arrest was initiated by a CI (*Id.* at ¶47);

- The CI was not secured by any of the County Defendants (*Id.* at ¶48);

- It was on the date of the drug purchase which lead to Plaintiff's arrest that Defendants Winchell and Stark first met the CI (*Id.* at ¶50);

- That unspecified members of the Defendant law enforcement officers placed a hidden recording device on the CI and the drug buy was recorded on that device (*Id.* at ¶53);

- A quantity of cocaine was purchased by the CI (*Id.* at ¶61);

- The CI and his vehicle was searched prior to the purchase of cocaine (*Id.* at ¶79x);

- A "control call" was attempted prior to the purchase of cocaine (*Id.* at ¶79w);

- The CI was in Plaintiff's residence for approximately 15 minutes to purchase the cocaine (*Id.* at ¶61); and

- A Washington County Grand Jury indicted Plaintiff for the commission of the crimes of criminal sale of a controlled substance in the 3rd degree and criminal possession of a controlled substance in the 3rd degree (*Id.* at ¶¶85 and 86).

By omission, Plaintiff's Complaint "admits" several important facts that are implicated by his claims, for example:

- The CI identified Plaintiff as a known drug dealer;

- Plaintiff was present and/or in the general area when the CI purchased cocaine (*Id.* at ¶70);

- Plaintiff lived in the residence where the cocaine was purchased (*Id.* at ¶¶79c and d); and

- Since Plaintiff has not alleged that we was the subject of a warrantless arrest, County Defendants were acting pursuant to a validly issued warrant to arrest Plaintiff once the drug deal had been effectuated (Dkt. No. 1, generally).

## STANDARD OF REVIEW UNDER FRCP 12(b)

Rule 12(b)(6) provides that a cause of action shall be dismissed if a Complaint fails "to state a claim upon which relief can be granted," *Id.* While a "court must accept the material facts alleged in the Complaint as true and construe all reasonable inferences in the plaintiff's favor" in reviewing a motion to dismiss (*Phelps v. Kapnolas*, 308 F.3d 180, 184 [2d Cir. 2002] [citations omitted]), only a Complaint that states a plausible claim for relief can survive, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The United States Supreme Court's ruling in *Ashcroft v. Iqbal* is critical to the County Defendants' instant motion to dismiss pursuant to F.R.C.P. Rule 12(b). First, the Supreme Court in *Ashcroft v. Iqbal* made clear that in order to state a § 1983 claim against government officials, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Id.* at 1948 (emphasis added). "Government officials may not be held liable for. . . conduct of their subordinates...," *Id.* at 1948. Thus, while

the Court is constrained to credit the well-pled factual allegations contained in Plaintiff's Complaint, each County Defendant has the right to dismissal under Rule 12(b) when the Complaint fails to detail their culpable actions and the Constitution deprivation that allegedly resulted from such actions, *Iqbal, supra.*; *Valenti v. Massapequa Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 10076, 25-27 (E.D.N.Y. Feb. 5, 2010)

It is clear that Plaintiff's Complaint is insufficient regarding the requirements of a pleading against the County Defendants named in their individual capacities, as it merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action [which] will not do,'" *Ashcroft*, 129 S. Ct. at 1949. The Supreme Court in *Ashcroft* concluded "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" *Id.* The Supreme Court further directs that "under [FRCP] 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" *Id.* (quoting, *Twombly*, 550 U.S. 544, 555 (2007)). Like the defendants in *Ashcroft*, the County Defendants are entitled to dismissal of Plaintiff's Complaint since it fails to plead sufficient facts to state a claim for purported or unlawful action by any of the County Defendants, *Id.* at 1954.

## POINT I

### DEFENDANTS KORTRIGHT, ANDERSON AND STERN ARE IMMUNE FROM SUIT UNDER THE DOCTRINE OF PROSECUTORIAL IMMUNITY

As noted above, Plaintiff brings a variety of civil rights claims against the WCDA Defendants under 42 U.S.C. § 1983. Specifically, Plaintiff's § 1983 claims against all WCDA individual Defendants include malicious prosecution, abuse of process, failure to disclose certain exculpatory evidence, violation of Plaintiff's due process and conspiracy to violate Plaintiff's civil rights (Dkt. No. 1, generally). In addition, Plaintiff alleges that DA Kortright failed to

5

intervene and failed to supervise ADA's Anderson and Stern during the prosecution of Plaintiff's criminal case (*Id.*). Even as this Court reviews these allegations in the light most favorable to Plaintiff, the WCDA individual Defendants are entitled to absolute immunity for any actions taken in the course of their roles as advocates for the state. It is well established that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" (*Imbler v. Pachtman*, 424 U.S. 409, 410 [1976]), "is immune from a civil suit for damages under § 1983," *Id.* at 431 ("The Courts of Appeals...are virtually unanimous that a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties"); *see, also, Kalina v. Fletcher*, 522 U.S. 118 (1997) (such a prosecutor "is not amenable to suit [for damages] under § 1983"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity"). The rationale for conferring absolute immunity in such circumstances is that "the public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages," *Imbler, supra.*, at 424-25.

It is likewise well-settled that civil actions relating to a prosecutor's handling and presentation of evidence are squarely within a prosecutor's advocacy function – and, thus, entitled to absolute immunity, *Linda R. S. v. Richard D.*, 410 U.S. 614 (1973). Like the complete failure to disclose certain exculpatory evidence, the timing of a prosecutor's disclosure of exculpatory evidence is intimately connected to his/her role as an advocate for the state and entitled to absolute immunity, *Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009) ("[I]f [during trial] the prosecutors had tested all the evidence, and then sat on the exculpatory results

for at least 72 days, they may well have violated *Brady v. Maryland*...but they would be absolutely immune from personal liability"); *Lawlor v. Connelly*, 471 Fed.Appx. 64, 65 (2d Cir. 2012)("[t]his Court has repeatedly held...that a prosecutor is absolutely immune from liability under 42 U.S.C. § 1983 for his conduct before a grand jury" and that "this Court has specifically held that a prosecutor is immune from § 1983 liability for withholding exculpatory evidence from a grand jury")(citations omitted).  Therefore, the allegations in the Complaint that ADAs Anderson and Stern withheld exculpatory evidence, implicate prosecutorial activity for which they are immune from suit as a matter of law.

For the same reasons that the ADAs receive absolute immunity for their handling of exculpatory evidence, the DA also receives absolute immunity, *Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009) (supervisory prosecutors also receive absolute immunity for conduct implicating their advocacy function).  In *Van de Kamp*, the Supreme Court granted a DA absolute immunity against a failure to train claim because the allegedly defective training concerned tasks related to a prosecutor's basic trial duties and advocacy function.  The plaintiff in *Van de Kamp* argued that the DA failed to adequately train ADAs on their constitutional obligation to provide the defense with impeachment-related (Giglio) information, and that this failure should not be afforded absolute immunity because it was administrative, 555 U.S. at 343–44.  While the Supreme Court agreed that the failure to train/supervise claim was properly classified as challenging the DA's administrative function (*Id.* at 344), the Supreme Court also observed that, because this supervisory task "concern[ed] how and when to make impeachment information available at a trial[,]" it was "directly connected with [a] prosecutor's basic trial advocacy duties," *Id.* at 346.  Because of this connection, the Supreme Court concluded that supervisory prosecutors enjoy absolute immunity from claims asserting an administrative

obligation - such as training - "that itself is directly connected with the conduct of a trial" (*Id.* at 344); otherwise, a plaintiff could easily re-frame a prosecutor's trial failure as a supervisory prosecutor's failure to train, *Id.* at 347.   The plaintiff's claim in *Van de Kamp*—that a supervisory prosecutor should be liable for a failure to train with respect to how and when to make impeachment information available to the defense - is logically indistinguishable from Plaintiff's claim here.   In the present case, Plaintiff alleges that Kortright, a supervisory prosecutor, should be liable for a failure to train with respect to how and when to make exculpatory information available to the defense.   Like the DA's failure in *Van de Kamp*, DA Kortright's alleged failure to train the ADAs on how to share exculpatory evidence would involve an administrative obligation directly connected with the ADAs' basic trial advocacy duties.   Therefore, as a matter of law, Kortright is absolutely immune from Plaintiff's failure to train and supervise claim

Regarding Plaintiff's claims that all WCDA Defendants acted with racial animus towards Plaintiff, the Supreme Court has long held that absolute judicial immunity cannot "be affected by the motives with which...judicial acts are performed," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)(*quoting, Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 [1871]).   Thus, a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive," *Forrester v. White*, 484 U.S. 219, 227 (1988).   Similarly, the Second Circuit has held that racially invidious prosecutions, pursued without probable cause, are reprehensible, but such motives do not necessarily remove conduct from the protection of absolute immunity since the prosecutorial misconduct may be subject to professional or even criminal sanctions at the same time that it fits within the scope of advocative functions entitled to absolute immunity from suit for money damages, *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989) (recognizing that

8

prosecutors enjoying absolute immunity from suit for money damages may face other sanctions). As such, Plaintiff's claims against individual Defendants, Kortright, Anderson and Stern, must be dismissed in their entirety.

<strong><u>POINT II</u></strong>

<strong>DEFENDANTS WINCHELL AND STARK ARE<br>ABSOLUTELY IMMUNE FROM SUIT</strong>

Even if Plaintiff is alleging that the testimony of Defendants Winchell or Stark, either before the Grand Jury or at trial, was racially motivated, as a matter of law, both are immune from suit. As to defendant Winchell, the Complaint alleges that Plaintiff's indictment was secured as a result of Defendant Winchell's Grand Jury testimony (Dkt. No. 1, ¶¶65, 79v), which Plaintiff claims was inconsistent with his trial testimony (*Id.* at ¶¶102-105, 79w). As to Defendant Stark, Plaintiff broadly speculates that he offered false testimony at trial (*Id.* at ¶103). Even accepting Plaintiff's allegations as true (which Defendants deny), both Defendants Winchell and Stark are entitled to absolute immunity from suit under § 1983.

Dispositive in this case is a recent Supreme Court decision which held that absolute immunity for grand jury testimony is necessary in order to safeguard the vital function that grand juries play in modern criminal procedure, by assuring that witnesses may provide candid testimony without fear of retaliatory suit, *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012). There, a unanimous Court affirmed the Eleventh Circuit, holding that grand jury witnesses, like trial witnesses, are entitled to absolute immunity from any liability arising from their testimony, *Id.*

In *Rehberg*, the plaintiff, pursuant to § 1983, alleged that Defendant law enforcement officer had committed perjury at various grand jury proceedings which led to the plaintiff being indicted several times, only to have the criminal prosecutions subsequently dismissed, *Id.* In addition to holding that grand jury witnesses were entitled to absolute immunity, the Court held

9

that this immunity cannot be circumvented by a plaintiff in a civil action claiming that grand jury witnesses conspired to present false testimony, *Id.* Finally, the Court held that the fact that grand jury witnesses, like trial witnesses, may be subject to prosecution for perjury is a sufficient deterrent to knowingly providing false testimony, as follows:

> "The factors that justify absolute immunity for trial witnesses apply with equal force to grand jury witnesses. In both contexts, a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence. And in neither context is the deterrent of potential civil liability needed to prevent perjurious testimony. In Briscoe, the Court concluded that the possibility of civil liability was not needed to deter false testimony at trial because other sanctions--chiefly prosecution for perjury--provided a sufficient deterrent. *Id.*, at 342, 103 S. Ct. 1108, 75 L. Ed. 2d 96. Since perjury before a grand jury, like perjury at trial, is a serious criminal offense, see, e.g., 18 U.S.C. § 1623(a), there is no reason to think that this deterrent is any less effective in preventing false grand jury testimony," *Id.*

Therefore, Defendant Winchell's testimony, both at Grand Jury and at trial, and defendant Stark's trial testimony, for which Plaintiff now seeks retaliatory litigation and damages, are to afforded absolute immunity. Therefore, Plaintiff's claims as against Defendants Winchell and Stark must be dismissed as a matter of law.

### POINT III

### PLAINTIFF'S COMPLAINT FAILS TO STATE PLAUSIBLE §§ 1981, 1983 AND 1985 CLAIMS AGAINST COUNTY DEFENDANTS

Plaintiff alleges claims under three federal civil rights statutes, 42 U.S.C. § 1983 (Dkt. No. 1, ¶¶118-123; § 1985 (*Id.* at ¶¶ 120-123), and § 1981 (*Id.* at ¶¶116-117) are legally infirm as they relate to the County Defendants. Moreover, Plaintiff's claim that his First, Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution were

violated by County Defendants is likewise legally infirm (Dkt. No. 1, ¶1).[1]  As explained fully,

*infra.*, none of Plaintiff's allegations raises claims on which the Court can grant relief.[2]

### A.    42 U.S.C. §§ 1981 and 1985

Plaintiff's allegations that County Defendants discriminated against him on the basis of

race, or that they conspired to deprive him of equal protection of the law, are not supported by

the Complaint and therefore, must be dismissed as a matter of law.

### i.    § 1981

In Plaintiff's first cause of action of the Complaint (Dkt. No. 1, ¶¶ 116 and 117), Plaintiff

alleges race discrimination under 42 U.S.C. § 1981.  To state a claim under Section 1981, a

plaintiff must allege facts establishing (1) that the plaintiff is a member of a racial minority; (2)

that the defendant intended to discriminate on the basis of race; and (3) that the discrimination

concerned one or more of the activities enumerated in the statute, *Mian v. Donaldson Lufkin &*

*Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)(*citing, Baker v. McDonald's Corp.*, 686 F.

Supp. 1474, 1481 (S.D. Fla. 1987)).  The enumerated activity at issue here is Plaintiff's "rights as

---

[1] Although alleged, Plaintiff has not cited an example of how his First, Sixth, Eighth and Thirteenth Amendment rights were allegedly violated by any of the defendants, much less County Defendants (Dkt. No. 1, generally).  In fact, Plaintiff's Complaint is devoid of any facts which support these allegations (*Id.*) and/or is inapposite to well-settled law.  For example, Plaintiff's Sixth Amendment allegation ignores the undisputed fact that Plaintiff was arrested on June 21, 2012 and released on December 6, 2012 (*Id.* at ¶89) after he was found not guilty of all charges by a jury of his peers (Dkt. No. 1, ¶72); see, *Barker v. Wingo*, 407 U.S. 514 (1972); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(the Eighth Amendment is reserved for convicted prisoners).  Moreover, regarding Plaintiff's Thirteenth Amendment claim, it too must be dismissed, as the Complaint is devoid of allegations that Plaintiff was subject to "involuntary servitude" while detained (Dkt. No. 1, generally).  The remainder of Plaintiff's alleged constitutional violations are discussed further herein.
[2] Should the Court dismiss all of Plaintiff's federal claims as against County Defendants, it should decline to exercise supplemental jurisdiction over plaintiff's remaining state tort claims for false arrest, malicious prosecution, abuse of process, assault and battery, negligence, negligent hiring/retention/supervision and conspiracy (Dkt. No. 1 ¶¶143-145) pursuant to 28 U.S.C. §1367(c)(3); *Carnegie Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine…will point toward declining to exercise jurisdiction over the remaining state-law claims").

guarantees under…the Fourth and Thirteenth Amendments of the United States Constitution," 42 U.S.C. § 1981; *see*, Dkt. No. 1, ¶117.

Section 1981 "can be violated only by purposeful discrimination," *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982). "[I]n order to survive a motion to dismiss his § 1981 claim, a plaintiff must allege with specificity facts sufficient to show or raise a plausible inference that the defendant purposefully discriminated against him because of the plaintiffs' race," *Garg v. Albany Indus. Dev. Agency*, 899 F. Supp. 961, 967 (N.D.N.Y. 1995), *aff'd mem.*, 104 F.3d 351 (2d Cir. 1996). "[M]erely juxtaposing the fact of one's race with an instance of [alleged] discrimination is insufficient to state a claim," *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989). A § 1981 claim will not withstand a motion to dismiss without a "fact-specific allegation of a causal link between defendants' [alleged] conduct and plaintiffs' race," *Id.*

Although Plaintiff generally contends that Defendants' actions with respect to his arrest and prosecution were "motivated by racial animus" (Dkt. No. 1, ¶117), that conclusory allegation is insufficient as a matter of law to state a claim of race discrimination, *see, e.g., Dartmouth Review*, 889 F.2d at 19; *Garg*, 899 F. Supp. at 967. Plaintiff does not allege a single fact supporting a plausible inference that any of the County Defendants' conduct was motivated by Plaintiff's race. Rather, Plaintiff relies on statements that Plaintiff alleges undisclosed defendants made at unspecified dates. Plaintiff's allegations here are like those dismissed in *Dartmouth Review*, wherein the Court used the "ketchup bottle" analogy, to wit; the arguments made by plaintiffs there (and here) "looks quite full, but it is remarkably difficult to get anything useful out of it," 889 F.2d at 18.

12

Simply stated, Plaintiff contends that he was arrested and prosecuted merely on the basis of his race, while ignoring the contradictory facts contained in the Complaint that dispel this theory, as follows: 1) Plaintiff was present at the location of drug sale (Dkt. No. 1, ¶70); 2) that the CI was sold cocaine in Plaintiff's residence (*Id.* at ¶¶79c and d); 3) that he was indicted by a Grand Jury (*Id.* at ¶¶85 and 86); and 4) that he was arrested pursuant to a warrant (*Id.*, generally). Instead, Plaintiff relies solely on the mere fact that, as an African American, he could bring a §1981 claim, while presenting a Complaint which is woefully lacking in facts connecting his arrest and prosecution with race-based discrimination. Thus, Plaintiff's alleged misconduct in connection with his arrest and prosecution is not, *ipso facto*, itself the product of race discrimination. Here, Plaintiff does not offer a single fact to suggest that the County Defendants' conduct would have been different if, for example, they had arrested and prosecuted a Caucasian suspected of drug dealing, *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 339 (S.D.N.Y. 1999) ("It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus").

In sum, Plaintiff has failed to allege facts demonstrating that a state action pursued by County Defendants was based upon racial discrimination. Accordingly, the County Defendants are entitled to dismissal of the §1981 claim.

ii.　§ 1985

Plaintiff also alleges claims under 42 U.S.C. § 1985, apparently based on his sweeping allegations that all Defendants acted with racial animus by generally alleging, but not specifying which law enforcement defendants in particular, uttered racial epithets in his presence (Dkt. No. 1, ¶38). Plaintiff makes no allegations that individual Defendants Kortright, Anderson or Stern acted with a racial animus toward Plaintiff (Dkt. No. 1, generally). Plaintiff does not allege any

facts that would plausibly indicate that any of the conduct at issue is attributable to County Defendants, nor does he allege facts to support his claims that County Defendants conspired to violate Plaintiff's constitutional rights. Accordingly, the Complaint fails to state any claim at all against County Defendants based on these events, let alone any violations of § 1985.

To state a claim for a violation of 42 U.S.C. §1985(3), or to state a claim of impeding justice in state court under §1985(2), Plaintiff must allege that County Defendants acted with racial animus, *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *citing, Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971). This District has held that allegations citing violations of §1985 must be "plead with specificity," *Waldron v. Rotzler*, 862 F. Supp. 763, 769 (N.D.N.Y 1994).

Here, Plaintiff sets forth no facts establishing how the County Defendants acted with any racial animus when arresting, charging, holding and later prosecuting Plaintiff. The only incident of racial animus identified in the Complaint is the alleged use of racial epithets by unidentified law enforcement offers, at an unspecified date, location and time. However, the Complaint is clear that any such alleged use of racial epithets occurred "prior to January 2012" (Dkt. No. 1, ¶38) and precedes any alleged involvement by County Defendants. The only allegation of racial animus by any of the County Defendants are the naked assertions that they "conspired" to "frame" and later prosecute Plaintiff on drug charges (*Id.*, generally). These conclusory allegations fall well short of the specific pleading requirements necessary to sustain a claim of racial animus pursuant to §1985, *see, Waldron*, 862 F. Supp. 763, 769 (N.D.N.Y. 1994)(noting that "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically plead in the complaint to withstand dismissal under Rule 12(b)(6)"). Here, because no specific

allegations of racial animus are directed at any of the County Defendants, these claims must be dismissed.

Plaintiff also fails to set forth specific facts in support of his claim that any County Defendant engaged in a conspiracy. Plaintiff does not even allege facts that would support the inference that there was "a tacit understanding to carry out the prohibited conduct," *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988). While conspiracies are "by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence," (*Pangburn v. Clubertson*, 200 F.3d 65, 72 [2d Cir. 1999])(citations and internal quotation marks omitted), mere conclusory allegations are insufficient to state a claim for conspiracy, *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, also, Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)("conclusory, vague, or general allegations of conspiracy" insufficient to state a claim for conspiracy). For claims of § 1983 or § 1985(3) conspiracies to survive a motion to dismiss, the plaintiff "must provide some factual basis supporting a meeting of the minds...," *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013)(citations and internal quotation marks omitted).

Here, Plaintiff merely alleges that "defendants named herein together...conspired among and between themselves to deprive plaintiff Peddie Jenkins of his Constitutional rights, and did deprive plaintiff Peddie Jenkins of said rights...," Dkt. No. 1, ¶121. This allegation, without more, lacks a "factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end," *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal citations and quotation marks omitted). Moreover, Plaintiff does not allege that there were any racial epithets uttered by individual WCDA Defendants Kortright, Anderson or Stern (Dkt. No. 1, generally). Therefore, Plaintiff's threadbare allegations of

conspiracy by County Defendants are entirely conclusory and, due to the absence of any supporting facts or evidence, cannot survive dismissal, *Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir. 1991), cert. denied, 502 U.S. 866, 112 S. Ct. 193, 116 L. Ed. 2d 153 (1991) (setting forth a § 1985 claim that is "couched in terms of conclusory allegations" will not pass muster).  Thus, Plaintiff's § 1985 conspiracy claim must be dismissed.

   iii. 42 U.S.C. § 1983

  Plaintiff's Second and Third Causes of action allege that, motivated by racial animus, all Defendants conspired with the intent to violate Plaintiff's rights pursuant 42 U.S.C. § 1983, and numerous rights and privileges provided under the Constitution (Dkt. No. 1 ¶¶118-123).

  It is well-settled, that when analyzing a claim brought by a plaintiff, a Court must first ignore "mere conclusory statements" or legal conclusions, which are not entitled to the presumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Complaint must also contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Therefore, a plaintiff is obliged to amplify a claim with some factual allegations to allow the Court to draw the reasonable inference that the defendant is liable for the alleged conduct, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

  To determine which allegations it may consider, the Court must first identify conclusory pleadings that are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")(*citing, Bell Atl. Corp. v. Twombly*, 550 U.S. at 555).  Once it has identified well-pleaded factual allegations, the Court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," *Iqbal*, 129 S. Ct. at 1950.

16

In order to state a conspiracy claim under § 1983, a plaintiff must allege that wrongful conduct: (1) was committed by a person acting under the color of state law; and (2) deprived a person of rights or privileges secured by the Constitution or laws of the United States, *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). However, conclusory allegations of conspiracy, such as those set forth in the instant Complaint, are insufficient basis for liability under § 1983, *Fox v. County of Yates*, 2010 U.S. Dist. LEXIS 120110 (W.D.N.Y. Nov. 12, 2010); *Otor, S.A. v. Credit Lyonnais, S.A.*, 2006 U.S. Dist. LEXIS 64885 (S.D.N.Y.2006); *see, also, Davey v. Jones*, 2007 U.S. Dist. LEXIS 35965 (S.D.N.Y.2007) ("bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss"). Rather, to plead a conspiracy under § 1983, a "plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy. A complaint containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss," *Serbalik v. Gray*, 24 F.Supp.2d 127, 132 (N.D.N.Y. 1998). Moreover, "complaints...must include specific allegations of facts showing a violation of rights 'instead of a litany of general conclusions that shock but have no meaning," *Waldron v. Rotzler*, 862 F. Supp. 763, 768 (N.D.N.Y. 1994) *citing, Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987). As explained fully, *supra.*, Plaintiff's allegations here fall far short of stating a viable claim of conspiracy between any of the defendants, much less the County Defendants.

As to the remainder of Plaintiff's §1983 claims, alleging, *inter alia.*, false arrest and malicious prosecution, as well as violations of his Constitutional rights, the Second Circuit Court of Appeals recently dismissed a case as against municipal defendants which is instructive here. In *Stansbury v. Wertman*, 721 F.3d 84 (2d Cir. June 26, 2013), an African-American woman

shoplifted approximately $800 of goods from a supermarket. Prior to fleeing the store, the supermarket security observed her open an unused Old Navy plastic bag and fill it with merchandise. The supermarket security officers were unable to apprehend the woman and called the state police. When the state trooper arrived, he was given a description of the woman; one security officer stated that she was a "black female wearing blue jeans and a maroon windbreaker," and the other added that she was "about 5'5" tall". The trooper was also provided with a copy of the store security video, which later he watched. The trooper then investigated two local Old Navy stores where he was provided with the name of a woman fitting the plaintiff's description who visited the store on the same evening that the shoplifting occurred. The trooper followed this lead and visited the home of the plaintiff, who appeared to be the same woman depicted in the security video. The trooper also noticed that she acted nervous in his presence and was evasive when responding to his questions. Thereafter, the trooper produced a photo array, in a manner which was in violation of the New York State Police Field Manual, and obtained sworn statements from the supermarket's security officers identifying the plaintiff as the shoplifter. Upon her arrest, the plaintiff was listed to be 5'9" in height; she was later acquitted of all charges and commenced a lawsuit under § 1983.

In dismissing *Stanbury's* claims, the Second Circuit held that in matters alleging false arrest and malicious prosecution, a court must "account for the evidence 'on the totality of the circumstances,'" *Id., citing, Brinegar v. United States*, 338 U.S. 160 (1949). To that end, the Second Circuit instructed:

> "The totality of the circumstances test is no mere formality; it may frequently alter the outcome of a case. 'Those who do not take into account conditional probability are prone to making mistakes in judging evidence. They may think that if a particular fact does not itself prove the ultimate proposition (e.g., whether the [officer had probable cause]), the fact may be tossed aside and the next fact may be evaluated as if the first

did not exist.' (citation omitted)  'The significance of each [relevant] factor[s] may be enhanced or diminished by surrounding circumstances' (citation omitted). Review for probable cause should encompass 'plainly exculpatory evidence' alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest (citations omitted).  A story is never a single chapter, it is the experience of the entire tale; the same is true of probable cause." *Id.* at 92-93.

When the *Stansbury* Court reviewed the evidence and "ignor[ed] [the plaintiff's] frivolous allegations" of racial animus by defendants, it determined that, even though the evidence identifying the plaintiff was not accurate (i.e., the description of the plaintiff's appearance and height) and that the photo array of the plaintiff was improper, the combined evidence, including the trooper's intuitions regarding the plaintiff's nervousness and evasiveness, established probable cause, *Id* at 93.

The evidence before this Court is even more persuasive.  By virtue of the admissions (and omissions) contained in Plaintiff's Complaint, there was presumptive probable cause to arrest Plaintiff, to detain him and to prosecute him for selling drugs.  The totality of the evidence available to the WCSD and its officers at the time of Plaintiff's arrest was, as follows: 1) that the information relating to the drug buy leading to Plaintiff's arrest was initiated by a CI who identified Plaintiff as a known drug dealer (*Id.* at ¶47); 2) cocaine was purchased by the CI (*Id.* at ¶61); 3) the CI and his vehicle were searched prior to the purchase of cocaine (*Id.* at ¶79x); 4) the CI was in Plaintiff's residence for approximately 15 minutes to purchase the cocaine (*Id.* at ¶61); 5) Plaintiff was present and/or in the general area when the CI purchased cocaine (*Id.* at ¶70); and 6) Plaintiff lived in the residence where the cocaine was purchased (*Id.* at ¶¶79c and d). Moreover, a Grand Jury indicted Plaintiff on all charges for which he was arrested under a valid arrest warrant (*Id.* at ¶¶85 and 86), thereby necessarily concluding that there was probable cause to arrest and prosecute Plaintiff, *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (probable

cause is an absolute defense to claims of false arrest and malicious prosecution).   As such, Plaintiff's second and third causes of action brought pursuant to §1983 must be dismissed as against the County Defendants.

## POINT IV

### PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY AS AGAINST THE COUNTY, THE WCSD OR THE WCAD

Plaintiff has not sufficiently pled, and cannot establish, a claim against the County under *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978).   To establish municipal liability for an alleged constitutional deprivation, Plaintiff must plead and prove that the act was pursuant to a municipal custom or policy, *Segal v. City of New York*, 459 F.3d 207, 209 (2d Cir. 2006).   Plaintiff's Complaint, however, is completely devoid of any factual allegations that Plaintiff's constitutional rights were violated pursuant to an official policy, practice, or custom of Washington County.   In fact, Plaintiff's Complaint does not even mention or refer to any County policy, practice, or custom that he claims violated his rights.

There is nothing in Plaintiff's Complaint that supports a plausible inference that the County maintained a policy, practice, or custom of which caused the injuries Plaintiff alleges he sustained, *Zherka v. City of New York*, 459 Fed. Appx. 10 (2d Cir. 2012) (Summary Order); *Bazile v. City of New York Dep't of Educ.*, 2013 U.S. Dist. LEXIS 96896 (E.D.N.Y. July 11, 2013) (holding that a § 1983 plaintiff must show a "direct causal link" between the municipal action and the constitutional deprivation).   As the Eastern District recently held in the factually analogous case of *Brown v. City of New York* (2013 U.S. Dist. LEXIS 89955 [E.D.N.Y. 2013]), "Plaintiff has made nowhere near the kind of factual pleading needed to avoid dismissal of his Monell claim against..." the County, *Id.* at 39.

The Supreme Court has reaffirmed the guiding principles which define municipal civil rights liability based upon a failure to train or oversee law enforcement personnel. In *Connick v. Thompson* (131 S. Ct. 1350, 1359 [2011]), the Court described the parameters of municipal liability in the following terms:

> "A municipality or other local government may be liable . . .if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation. But, under § 1983, local governments are responsible only for 'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions…Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.…These are 'action[s] for which the municipality is actually responsible.' In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822-823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)([A] policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact'….Only then 'can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983'.… '[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action'.… Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program,' *Id.* (some citations deleted).

Here, Plaintiff's Complaint fails to meet this exacting standard of pleading since it does not describe any County policy or custom which caused a constitutional deprivation for the plaintiff. In the absence of such well-pleaded allegations, a municipal liability claim cannot be sustained against the County Defendants and this claim should be dismissed.

<u>**POINT V**</u>

**INDIVIDUAL DEFENDANTS MURPHY, WINCHELL, STARK, KORTRIGHT, ANDERSON AND STERN ARE ENTITLED TO QUALIFIED IMMUNITY**

Even assuming, *arguendo*, this Court finds that Plaintiff has pled a plausible claim against individual County Defendants, Murphy, Winchell, Stark, Kortright, Anderson and Stern, as a matter of law, they would nonetheless be entitled to qualified immunity. "Government officials 'enjoy qualified immunity when they perform discretionary functions if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights,'" *Tennenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (*quoting, Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998); *see also, Kelsey v. Schoharie County*, 567 F.3d 54 (2d Cir. 2009).

The United States Supreme Court has identified two issues which need to be addressed in determining whether or not to grant qualified immunity, *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, whether the officer's conduct violated a constitutional right; and second, whether or not there has been a violation of a clearly established law, *Id.* Most importantly, recognizing that qualified immunity is immunity from suit, not merely immunity from liability, the Supreme Court once again emphasized in *Pearson v. Callahan* (555 U.S. 223 [2009]), "...the importance of resolving immunity questions at the earliest possible stage in litigation," *Id.* at 815 (*quoting, Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," *Id.* at 200. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,'" *Id.* at 200 (*quoting, Mitchell v. Forsyth*, 472 U.S. 511, 526 [1985]).

Here, Plaintiff has not - and cannot - identify a single case in this Circuit that would have informed any of the individual County Defendants that they were in violation of law or Plaintiff's rights guaranteed under the Constitution. However, this Circuit has held that, when analyzing either prong of the qualified immunity standard, there is no need to locate and cite a case exactly "on point," "but existing precedent must have placed the statutory or constitutional question beyond debate," *Coollick v. Hughes*, 699 F.3d 211 (2d Cir. Conn. 2012), *quoting, Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct," *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). Finally, "we do not consider the subjective intent, motives, or beliefs of the officials," *Conn. ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106 (2d Cir. 2003) (citation omitted). Instead, Courts utilize an objective standard for judging the actions of state actors, *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

Even as alleged, individual County Defendants Murphy, Winchell and Stark were: 1) acting upon information relating to the drug buy from a CI who was not secured by the County (*Id.* at ¶¶47 and 48); 2) acting pursuant to a warrant to arrest Plaintiff once the drug deal had been effectuated (Dkt. No. 1, generally); 3) confirmed that cocaine was purchased by the CI (*Id.* at ¶61); 4) conducted a search of the CI and his vehicle prior to the purchase of cocaine (*Id.* at ¶79x); 5) attempted a "control call" with Plaintiff prior to the purchase of cocaine (*Id.* at ¶79w); 6) observed Plaintiff was present and/or in the general area when the CI purchased cocaine (*Id.* at ¶70); and 7) ascertained that Plaintiff lived in the residence where the cocaine was purchased (*Id.* at ¶¶79c and d). As to individual County Defendants Kortright, Anderson and Stern, they prosecuted Plaintiff following a Grand Jury indictment against Plaintiff for the commission of

the crimes of criminal sale of a controlled substance in the 3rd degree and criminal possession of a controlled substance in the 3rd degree (*Id.* at ¶¶85 and 86). Thus, all individual County Defendants did not violate any of clearly established rights of plaintiff, nor could they have had reason to believe that violated Plaintiff's rights, *Tennenbaum, supra.,* at 596. Therefore, all individually named County Defendants are entitled to qualified immunity as a matter of law, even accepting Plaintiff's version of the facts.

## CONCLUSION

WHEREFORE, it is respectfully requested that the Court: (a) dismiss Plaintiff's Complaint as against all County Defendants; and (b) grant such other and further relief in the County Defendants' favor as this Court deems just and proper.

Dated:          April 4, 2014

Respectfully submitted,

LEMIRE, JOHNSON & HIGGINS, LLC

By:   _____
          April J. Laws (517148)

24