UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PEDDIE JENKINS,

                              Plaintiff,

v.                                                    1:14-CV-0064
                                                      (GTS/RFT)
CNTY. OF WASHINGTON; WASHINGTON CNTY.
SHERIFF'S DEP'T; JEFFEREY MURPHY, Washington
Cnty. Sheriff, Individually; JOHN WINCHELL, Washington
Cnty. Undersheriff, Individually; SCOTT STARK,
Washington Cnty. Sheriff's Deputy, Individually; VILLAGE
OF HUDSON FALLS; HUDSON FALLS POLICE DEP'T;
RANDY DIAMOND, Hudson Falls Police Chief,
Individually; SCOTT GILLIS, Hudson Falls Police Officer,
Individually; SCOTT MOULTHROP, Hudson Falls Police
Officer, Individually; CITY OF GLENS FALLS; CITY OF
GLENS FALLS POLICE DEP'T; WILLIAM VALENZA,
Glens Falls Police Chief, Individually; PETER CASERTINO,
Glens Falls Police Officer, Individually; PAUL
FRETTELOSO, Glenns Falls Police Officer, Individually;
NEW YORK STATE COMM'R OF DEP'T OF CORR. AND
CMTY. SUPERVISION; MARIO TORRES, New York State
Parole Officer, Individually; SCOTT HURTEAU, New York
State Parole Officer, Individually; WASHINGTON CNTY.
DIST. ATTORNEY'S OFFICE; KEVIN KORTRIGHT,
Washington Cnty. Dist. Attorney, Individually; DEVIN
ANDERSON, Washington Cnty. Assistant Dist. Attorney,
Individually; and MICHAEL STERN, Washington Cnty.
Assistant Dist. Attorney, Individually,

                              Defendants.
_____

APPEARANCES:                          OF COUNSEL:

WILLIAM E. MONTGOMERY, III, ESQ.      WILLIAM E. MONTGOMERY, III, ESQ.
  Counsel for Plaintiff
Glens Falls, NY

LEMIRE JOHNSON, LLC                          GREGG T. JOHNSON, ESQ.
  Counsel for County Defendants              APRIL J. LAWS, ESQ.
Malta, NY

BURKE, SCOLAMIERO, MORTATI &                 JUDITH B. AUMAND, ESQ.
HURD, LLP                                    THOMAS J. MORTATI, ESQ.
  Counsel for Village Defendants
Albany, NY

CARTER, CONBOY, CASE, BLACKMORE,             JAMES A. RESILA, ESQ.
MALONEY & LAIRD, P.C.                         WILLIAM C. FIRTH, ESQ.
  Counsel for City Defendants
Albany, NY

HON. ERIC T. SCHNEIDERMAN                     RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
  Counsel for State Defendants
Albany, NY

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Peddie Jenkins ("Plaintiff") against five village entities and employees ("Village Defendants"), five city entities and employees ("City Defendants"), nine county entities and employees ("County Defendants"), and a state entity and two state employees ("State Defendants"), are four motions: a motion for judgment on the pleadings by the Village Defendants (Dkt. No. 46); a motion for judgment on the pleadings by the City Defendants (Dkt. No. 41); a motion to dismiss for failure to state a claim by the County Defendants (Dkt. No. 33); and a motion to dismiss for failure to state a claim by the State Defendants (Dkt. No. 44). For the reasons set forth below, Defendants' motions are granted and Plaintiff's Complaint is dismissed.

2

# TABLE OF CONTENTS

I.   RELEVANT BACKGROUND........................................................................................4
     A.   Plaintiff's Claims..................................................................................................4
     B.   Parties' Briefing on Defendants' Motions...........................................................7
          1.   Parties' Briefing on Village Defendants' Motion for Judgment
               on the Pleadings......................................................................................7
               a.   Village Defendants' Memorandum of Law in Chief......................7
               b.   Plaintiff's Opposition Memorandum of Law..................................9
               c.   Village Defendants' Reply Memorandum of Law.........................10
          2.   Parties' Briefing on City Defendants' Motion for Judgment
               on the Pleadings....................................................................................12
               a.   City Defendants' Memorandum of Law in Chief..........................12
               b.   Plaintiff's Opposition Memorandum of Law................................13
               c.   City Defendants' Reply Memorandum of Law..............................15
          3.   Parties' Briefing on County Defendants' Motion to Dismiss.................16
               a.   County Defendants' Memorandum of Law in Chief......................16
               b.   Plaintiff's Opposition Memorandum of Law................................17
               c.   County Defendants' Reply Memorandum of Law..........................19
          4.   Parties' Briefing on State Defendants' Motion to Dismiss...................21
               a.   State Defendants' Memorandum of Law in Chief..........................21
               b.   Plaintiff's Opposition Memorandum of Law................................25
               c.   State Defendants' Reply Memorandum of Law..............................27

II.  GOVERNING LEGAL STANDARDS......................................................................29
     A.   Legal Standards Governing a Motion for Judgment on the Pleadings
          and a Motion to Dismiss for Failure to State a Claim........................................29
     B.   Legal Standards Governing Plaintiff's Claims and Defendants'
          Defenses..............................................................................................................33

III. ANALYSIS................................................................................................................33
     A.   Analysis of Village Defendants' Motion for Judgment on the Pleadings.................33
     B.   Analysis of City Defendants' Motion for Judgment on the Pleadings....................37
     C.   Analysis of County Defendants' Motion to Dismiss.................................................38
     D.   Analysis of State Defendants' Motion to Dismiss....................................................41

# I.     RELEVANT BACKGROUND

## A.     Plaintiff's Claims

Generally, in his Complaint, Plaintiff alleges that Defendants violated his federal

constitutional and statutory rights when, between January of 2012 and December of 2012 in

Washington County, New York, they wrongfully investigated him, indicted him by grand jury,

arrested him pursuant to a warrant, and prosecuted him for the crimes of Criminal Sale of a

Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in

the Third Degree (of which he was acquitted at trial on December 6, 2012) based on his African-

American race.  (Dkt. No. 1.)

More specifically, Plaintiff alleges misconduct by five village entities and employees: the

Village of Hudson Falls, the Hudson Falls Police Department, Hudson Falls Police Chief Randy

Diamond, Hudson Falls Police Officer Scott Gillis, and Hudson Falls Police Officer Scott

Moulthrop ("Village Defendants").  (*Id*.)  Moreover, he alleges misconduct by five city entities

and employees: the City of Glens Falls, the Glens Falls Police Department, Glens Falls Police

Chief William Valenza, Glens Falls Police Officer Peter Casertino, and Glens Falls Police

Officer Paul Fretteloso ("City Defendants").  (*Id*.)  Furthermore, he alleges misconduct by nine

county entities and employees: the County of Washington, the Washington County Sheriff's

Department, Washington County Sheriff Jefferey Murphy, Washington County Undersheriff

John Winchell, Washington County Sheriff's Deputy Scott Stark, Washington County District

Attorney's Office, Washington County District Attorney Kevin Kortright, Washington County

Assistant District Attorney Devin Anderson, and Washington County Assistant District Attorney

Michael Stern ("County Defendants").  (*Id*.)  Finally, he alleges misconduct by a state entity and

two state employees: the New York State Commissioner of the Department of Corrections and Community Supervision, New York State Parole Officer Mario Torres, and New York State Parole Officer Scott Hurteau ("State Defendants"). (*Id.*)

Generally, based on these factual allegations, Plaintiff asserts eight claims against these twenty-two Defendants. (*Id.*) First, Plaintiff claims that Defendants intentionally or recklessly subjected him to unlawful arrest, wrongful confinement and imprisonment, unlawful strip searches, malicious prosecution, abuse of process, wrongful conviction and a conspiracy to cover-up the truth because of their racial animus toward him, in violation of 42 U.S.C. § 1981 and the Thirteenth Amendment. (*Id.*)

Second, Plaintiff claims that Defendants intentionally or recklessly subjected him to arrest, wrongful confinement and imprisonment, unlawful strip searches, unlawful assault and battery, malicious prosecution, abuse of process, wrongful conviction and a conspiracy to cover-up the truth because of their racial animus toward him, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. (*Id.*)

Third, Plaintiff claims that Defendants conspired among and between themselves to deprive him of his rights to a fair trial, to access to the Courts, and to be free from excessive force, unnecessary force, unreasonable arrest and seizure, from wrongful confinement, imprisonment, conviction, and from malicious prosecution, in violation of 42 U.S.C. §§ 1983 and 1985 and the Fourteenth Amendment. (*Id.*)

Fourth, Plaintiff claims that Defendants County of Washington and Washington County Sheriff's Department incurred municipal liability for the three above-described violations by (a) employing Defendant Murphy, who was the final decision maker with respect to matters

involving the Washington County Sheriff's Department, and/or (b) having in effect certain policies, practices and customs that caused the three above-described violations, in violation of 42 U.S.C. § 1983 and *Monell*. (*Id.*)

Fifth, Plaintiff claims that Defendants Village of Hudson Falls and Hudson Falls Village Police Department incurred municipal liability for the first three above-described violations by (a) employing Defendant Diamond, who was the final decision maker with respect to matters involving the Hudson Falls Police Department, and/or (b) having in effect certain policies, practices and customs that caused the three above-described violations, in violation of 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (*Id.*)

Sixth, Plaintiff claims that Defendants City of Glens Falls and Glens Falls City Police Department incurred municipal liability for the first three above-described violations by (a) employing Defendant Valenza, who was the final decision maker with respect to matters involving the Glens Falls Police Department, and/or (b) having in effect certain policies, practices and customs that caused the three above-described violations, in violation of 42 U.S.C. § 1983 and *Monell*. (*Id.*)

Seventh, Plaintiff claims that Defendant Washington County District Attorney's Office incurred municipal liability for the first three above-described violations by (a) employing Defendant Kortright, who was the final decision maker with respect to matters involving the Washington County District Attorney's Office, and/or (b) having in effect certain policies, practices and customs that caused the three above-described violations, in violation of 42 U.S.C. § 1983 and *Monell*. (*Id.*)

Eighth, Plaintiff claims that, by the above-described actions, Defendants caused violations of New York State law, including false arrest, false imprisonment, malicious prosecution, abuse of process, assault and battery, negligence, intentional infliction of emotional distress, negligent hiring and supervision, conspiracy, and "violating the rights otherwise guaranteed . . . under the . . . Constitution of the State of New York." (*Id.*)

Familiarity with the particular nature of Plaintiff's claims and the factual allegations supporting them is assumed in this Decision and Order, which is intended primarily for the review of the parties.

**B.      Parties' Briefing on Defendants' Motions**

**1.      Parties' Briefing on Village Defendants' Motion for Judgment on the Pleadings**

**a.      Village Defendants' Memorandum of Law in Chief**

Generally, in their motion to dismiss, the Village Defendants assert five arguments. (Dkt. No. 46, Attach. 1.) First, the Village Defendants argue, Plaintiff's claims against Defendants Gillis and Moulthrop should be dismissed because, even if the Court were to assume that Plaintiff alleges that the two Defendants offered false testimony, they are immune from suit under the traditional absolute immunity for witness testimony. (*Id.*)

Second, the Village Defendants argue, Plaintiff fails to state a claim against the Village Defendants under 42 U.S.C. §§ 1981, 1985 and 1983 for the following reasons: (a) the only incident of racial animus identified in the Complaint is the alleged use of racial epithets by *unidentified* law enforcement officers, at an *unspecified* date and time; and (b) indeed, the only allegations that are made separately against the Village Defendants are those against Defendants Moulthrop and Gillis, and those allegations are vague as to the particular roles played by

Moulthrop and Gillis in the *group* investigation of Plaintiff, and acknowledge that Gills ultimately took actions in *defense* of Plaintiff (e.g., testifying that Plaintiff's voice was not on the recording, testifying that the person in the blue sweat shirt was not involved in the criminal transaction, and opining that Plaintiff was not involved in the criminal transaction, etc.). (*Id.*)

Third, the Village Defendants argue, in the alternative, Plaintiff's municipal-liability claims against Defendants Village of Hudson Falls and Hudson Falls Police Department under 42 U.S.C. § 1983 and Plaintiff's individual-liability claim against Defendant Hudson Falls Police Chief Diamond under 42 U.S.C. § 1983 should be dismissed for the following reasons: (a) the Complaint is devoid of factual allegations plausibly suggesting that the alleged violations occurred pursuant to an official policy, practice or custom of Defendant Village of Hudson Falls (or the acts of Defendant Diamond as a policymaking official), and contains only conclusory allegations of such a policy, practice or custom; and (b) the Complaint is devoid of factual allegations plausibly suggesting the personal involvement of Defendant Diamond in the constitutional violations alleged. (*Id.*)

Fourth, the Village Defendants argue, in the alternative, Plaintiff's claims against Defendants Moulthrop and Gillis should be dismissed based on the doctrine of qualified immunity because, as alleged, those two Defendants' roles in the group investigation of Plaintiff did not violate any of his constitutional rights. (*Id.*)

Fifth, the Village Defendants argue, in the alternative, Plaintiff's claims against Defendant Hudson Falls Police Department should be dismissed, because a municipal police department is not a suable entity separate from the municipality in which the police department is organized. (*Id.*)

### b.     Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the Village Defendants' motion, Plaintiff addresses the first

four of the Village Defendants' five arguments.  (Dkt. No. 56.)

First, in response to the Village Defendants' arguments regarding the traditional absolute

immunity for witness testimony, Plaintiff argues that Defendants Gillis and Moulthrop are not

absolutely immune from suit under that traditional immunity, because the Complaint alleges that

they acted individually and collectively, and as part of the duly organized Drug Task Force, in

providing testimony and evidence to be presented to the grand jury and at trial (which was

perjured and false) while withholding exculpatory evidence for the purpose of causing the

unlawful arrest and prosecution of Plaintiff.  (*Id*.)

Second, in response to the Village Defendants' arguments regarding 42 U.S.C. §§ 1981,

1985 and 1983, Plaintiff argues that he states a claim against the Village Defendants under those

three statutes for the following reasons: (a) he sufficiently alleges racial animus by the Village

Defendants by alleging that three of those Village Defendants (Diamond, Gillis, and Moulthrop)

were members of the Drug Task Force when *other* members of that task force directed racial

epithets at him, thus leading to the reasonable inference that *all* of the Village Defendants were

motivated by Plaintiff's race in falsely accusing him of being a drug dealer; and (b) because

Plaintiff's theory of liability against the Village Defendants is that they "were operating as

members of a duly organized Drug Task Force," "it is illogical to expect the plaintiff to plead

isolated individual acts of a particular defendant in a vacuum."  (*Id*.)

Third, in response to the Village Defendants' arguments regarding the municipal liability

of Defendants Village of Hudson Falls and Hudson Falls Police Department, and the individual

liability of Defendant Diamond, Plaintiff argues that his Complaint does allege facts plausibility suggesting such liability for the following reasons: (a) the offending policy alleged in the Complaint (i.e., pursuant to which the violations occurred) is "the formalized policy, promulgated by the Village of Hudson Falls, which permitted [Defendants Gillis and Moulthrop] to participate as members of the Drug Task Force"; (b) the offending practice and/or custom alleged in the Complaint is the "fail[ure] to train and supervise [the Village of Hudson Falls'] employees in a fashion such as to prevent the violation of the plaintiff's constitutional rights," which practice and/or custom "continued over an extended period of time" and thus was clearly "widely known and tolerated"; and (c) Defendant Diamond, as "the primary decision maker[] with respect to policies concerning hiring, training, supervision, and procedures relating to the investigation and arrest in criminal actions," is a policymaking official. (*Id.*)

Fourth, in response to the Village Defendants' arguments regarding the doctrine of qualified immunity, Plaintiff argues that Defendants Moulthrop and Gillis are not protected from liability by that doctrine because, based on Plaintiff's factual allegations, those two Defendants' roles in the group investigation of Plaintiff (e.g., photographing and audio-recording an alleged drug transaction in which Plaintiff was accused of being present) did violate his constitutional rights. (*Id.*)

### c.     Village Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, the Village Defendants assert five arguments. (Dkt. No. 62.)  First, the Village Defendants argue, Plaintiffs' arguments regarding the traditional absolute immunity for witness testimony are unpersuasive, because Plaintiff fails to specifically address Defendants Moulthrop and Gillis' lack of liability for testimony, whether false or not, in the grand jury and/or at trial.  (*Id.*)

Second, the Village Defendants argue, Plaintiff's arguments regarding 42 U.S.C. §§ 1981, 1985 and 1983 are unpersuasive for the following reasons: (a) "[n]owhere in the Complaint is there a specific allegation of a particular Hudson Falls defendant making a racially motivated statement to or about the plaintiff and the date of such a statement"; and (b) it is unreasonable to infer that the Village Defendants were motivated by Plaintiff's race merely because they were present when *other* Defendants at some previous point in time directed racial epithets at Plaintiff. (*Id*.)

Third, the Village Defendants argue, Plaintiff's arguments regarding the municipal liability of Defendants Village of Hudson Falls and Hudson Falls Police Department and the individual liability of Defendant Diamond are unpersuasive for the following reasons: (a) contrary to Plaintiff's characterization of his Complaint in his opposition memorandum of law, "[t]here is no allegation of a particular policy or custom in place at the Village of Hudson Falls that caused a deprivation of constitutional rights," and the mere act of permitting certain Village Defendants to participate in a Drug Task Force cannot be reasonably said to have *caused* a constitutional violation; and (b) the individual liability of Defendant Diamond is not based on an allegation of a specific act of wrongdoing but the mere fact that he was in a position of supervisory authority, which is insufficient. (*Id*.)

Fourth, the Village Defendants argue, Plaintiff's arguments regarding qualified immunity are unpersuasive, because the alleged "wrongdoing" of Defendants Moulthrop and Gillis was "nothing more than statements of mistaken identity by [them]." (*Id*.)

Fifth, the Village Defendants argue, by failing to oppose the entirety of their fifth argument (i.e., regarding Plaintiff's claims against Defendant Hudson Falls Police Department), Plaintiff has abandoned his claims against Defendant Hudson Falls Police Department. (*Id*.)

### 2. Parties' Briefing on City Defendants' Motion for Judgment on the Pleadings

#### a. City Defendants' Memorandum of Law in Chief

Generally, in their motion to dismiss, the City Defendants assert five arguments. (Dkt. No. 41, Attach. 2.) First, the City Defendants argue, Plaintiff's claims against Defendants Casertino and Frettoloso should be dismissed because those two witnesses are immune from suit under the traditional absolute immunity for witness testimony. (*Id.*)

Second, the City Defendants argue, Plaintiff has failed to sufficiently plead causes of action pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 against City Defendants for the following reasons: (a) the only allegations that are made separately against the City Defendants are those against Defendants Casertino and Frettoloso, and those allegations are vague as to the particular roles played by Defendants Casertino and Frettoloso in the group investigation of Plaintiff; (b) in any event, the only incident of racial animus identified in the Complaint is the alleged use of racial epithets, at an unspecified date and time ("[p]rior to January 2012"), by unidentified members of a group of seven Defendants (only one of whom was a City Defendant–Casertino); and (c) moreover, no facts are alleged that plausibly suggest a conspiracy between the City Defendants. (*Id.*)

Third, the City Defendants argue, in the alternative, Plaintiff's municipal-liability claims against Defendant City of Glens Falls under 42 U.S.C. § 1983 and Plaintiff's individual-liability claim against Defendant Glens Falls Police Chief Valenza under 42 U.S.C. § 1983 should be dismissed for the following reasons: (a) the Complaint is devoid of factual allegations plausibly suggesting that the alleged violations occurred pursuant to the acts of Defendant Valenza as a policymaking official, or pursuant to an official policy, practice or custom of Defendant City of

Glens Falls; and (b) the Complaint is devoid of factual allegations plausibly suggesting the personal involvement of Defendant Valenza in the constitutional violations alleged. (*Id.*)

Fourth, the City Defendants argue, Plaintiff's claims against Defendants Frettoloso and Casertino should be dismissed under the doctrine of qualified immunity, because the only non-generalized allegations against them (i.e., that they participated in the group investigation of Plaintiff, which included the meeting with a confidential informant to conduct a controlled sale of narcotics, the photographing of Plaintiff, the audio-recording of an alleged drug transaction in which Plaintiff was accused of being present, and the inaccurate sketching of Plaintiff's residence) did not constitute a violation of Plaintiff's clearly established constitutional rights. (*Id.*)

Fifth, the City Defendants argue, in the alternative, Plaintiff's claims against Defendant Glen Falls Police Department should be dismissed, because a municipal police department is not a suable entity separate from the municipality in which the police department is organized. (*Id.*)

### b. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the City Defendants' motion, Plaintiff addresses the first four of the City Defendants' five arguments. (Dkt. No. 55.) First, in response to the City Defendants' arguments regarding the doctrine of absolute immunity, Plaintiff argues that Casertino and Frettoloso are not absolutely immune from suit under that traditional immunity, because the Complaint alleges that they acted individually and collectively, and as part of the duly organized Drug Task Force, in providing testimony and evidence to be presented to the grand jury and at trial (which was perjured and false) while withholding exculpatory evidence for the purpose of causing the unlawful arrest and prosecution of Plaintiff. (*Id.*)

Second, in response to the City Defendants' arguments regarding 42 U.S.C. §§ 1981, 1983, and 1985, Plaintiff argues that he states a claim against the City Defendants under those three statutes for the following reasons: (a) he sufficiently alleges racial animus by the City Defendants by alleging that one of those City Defendants (Casertino) was a member of the Drug Task Force when unidentified members of that group directed racial epithets at him, thus leading to the reasonable inference that all of the City Defendants were motivated by Plaintiff's race in falsely accusing him of being a drug dealer; and (b) because Plaintiff's theory of liability against the City Defendants is that they "were operating as members of a duly organized Drug Task Force," "it is illogical to expect the plaintiff to plead isolated individual acts of a particular defendant in a vacuum."  (*Id.*)

Third, in response to the City Defendants' arguments regarding the municipal liability of Defendant City of Glens Falls, and the individual liability of Defendant Glens Falls Police Chief Valenza, Plaintiff argues that his Complaint does allege facts plausibility suggesting such liability for the following reasons: (a) the offending policy alleged in the Complaint (i.e., pursuant to which the violations occurred) is "the formalized policy, promulgated by the City of Glens Falls[,] which permitted [Defendants Casertino and Frettoloso] to participate as members of the Drug Task Force"; (b) the offending practice and/or custom alleged in the Complaint is the "fail[ure] to train and supervise [the City of Glens Falls'] employees in a fashion such as to prevent the violation of the plaintiff's constitutional rights," which practice and/or custom "continued over an extended period of time" and thus was clearly "widely known and tolerated"; and (c) Defendant Valenza, as "the primary decision maker[] with respect to policies concerning hiring, training, supervision, and procedures relating to the investigation and arrest in criminal actions," is a policymaking official.  (*Id.*)

14

Fourth, in response to the City Defendants' arguments regarding the doctrine of qualified immunity, Plaintiff argues that Defendants Frettoloso and Casertino are not protected from liability by that doctrine because, based on Plaintiff's factual allegations, those two Defendants' roles in the group investigation of Plaintiff (e.g., photographing and audio-recording an alleged drug transaction in which Plaintiff was accused of being present) did violate his constitutional rights. (*Id*.)

### c. City Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, the City Defendants assert four arguments. (Dkt. No. 57.) First, the City Defendants argue, Plaintiff's arguments regarding the traditional absolute immunity for witness testimony are unpersuasive, because he fails to specifically address Defendants Casertino and Frettoloso's lack of liability for testimony, whether false or not, in the grand jury and/or at trial. (*Id*.)

Second, the City Defendants argue, Plaintiff's arguments regarding 42 U.S.C. §§ 1981, 1985 and 1983 are unpersuasive for the following reasons: (a) it is unreasonable to infer that Defendant Casertino was motivated by Plaintiff's race merely because he was present when other Defendants at some previous point in time directed racial epithets at Plaintiff; and (b) in any event, neither Frettoloso nor Valenza was present during those racial epithets. (*Id*.)

Third, the City Defendants argue, Plaintiff's arguments regarding qualified immunity are unpersuasive, because the Complaint does not allege facts plausibly suggesting that the false statements allegedly made by Defendants Casertino and/or Frettoloso were intentionally made by them, and thus their conduct cannot be considered as violating Plaintiff's clearly established constitutional rights. (*Id.*)

Fourth, the City Defendants argue, by failing to oppose the entirety of their fifth argument (i.e., regarding Plaintiff's claims against Defendant Glen Falls Police Department), Plaintiff has abandoned his claims against Defendant Glen Falls Police Department.  (*Id.*)

### 3.     Parties' Briefing on County Defendants' Motion to Dismiss

#### a.     County Defendants' Memorandum of Law in Chief

Generally, in their motion to dismiss, the County Defendants assert five arguments.  (Dkt. No. 33, Attach. 1.)  First, the County Defendants argue, Plaintiff's claims against Defendants Kortright, Anderson and Stern should be dismissed under the doctrine of prosecutorial immunity, because the acts complained of were taken in the course of these three Defendants' roles as advocates for the state (which acts did not become less prosecutorial in nature simply because Plaintiff alleged that the three Defendants committed them with racial animus).  (*Id.*)

Second, the County Defendants argue, Plaintiff's claims against Defendants Winchell and Stark should be dismissed because those two witnesses are immune from suit under the traditional absolute immunity for witness testimony.  (*Id.*)

Third, the County Defendants argue, Plaintiff fails to state a claim against the County Defendants under 42 U.S.C. §§ 1981, 1985 and 1983 for the following reasons: (a) his claim under 42 U.S.C. § 1981 fails because he only conclusorily alleges that the County Defendants' actions were motivated by racial animus, and indeed that conclusory allegation is undermined by the factual allegations that he was present at the general location of a drug sale, that a drug sale occurred in a residence in which Plaintiff lived, that he was indicted by grand jury, and that he was arrested pursuant to a warrant; (b) his claim under 42 U.S.C. § 1985 fails because the only incident of racial animus identified in the Complaint is the alleged use of racial epithets by

*unidentified* law enforcement officers, at an *unspecified* location, date and time (at some point "prior to January 2012"), and no facts are alleged that plausibly suggest a conspiracy between the County Defendants; and (c) his claim under 42 U.S.C. § 1983 fails because of the pleading defects identified above, as well as the fact that, based on Plaintiff's own factual allegations, presumptive probable cause existed to arrest him, detain him and prosecute him for selling drugs due to the issuance of an indictment. (*Id.*)

Fourth, the County Defendants argue, Plaintiff's municipal-liability claims against Defendants County of Washington, Washington County Sheriff's Department and Washington County District Attorney's Office should be dismissed, because the Complaint is devoid of factual allegations plausibly suggesting that the alleged violations occurred pursuant to an official policy, practice or custom of Defendant Washington County (or the acts of policymaking officials), and contains only conclusory allegations of such a policy, practice or custom. (*Id.*)

Fifth, the County Defendants argue, in the alternative, Plaintiff's claims against Defendants Murphy, Winchell, Stark, Kortright, Anderson and Stern should be dismissed because, based on his own factual allegations, those Defendants are protected from liability as a matter of law by the doctrine of qualified immunity for the following reasons: (a) Plaintiff has not identified a single case in this Circuit that rendered the rights in question clearly established; and (b) it was objectively reasonable for the individual County Defendants to believe that their acts did not violate any such clearly established rights. (*Id.*)

### b. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the County Defendants' motion, Plaintiff addresses each of the County Defendants' five arguments. (Dkt. No. 53.) First, in response to the County Defendants' arguments regarding the doctrine of prosecutorial immunity, Plaintiff argues that

Defendants Kortright, Anderson and Stern are not immune from suit under that doctrine, because the Complaint alleges that the acts committed by those three Defendants were outside the scope of their prosecutorial duties, occurring before the point when probable cause existed and approximately five months before Plaintiff's arrest (e.g., during the solicitation of the confidential informant and the investigation of Plaintiff). (*Id.*)

Second, in response to the County Defendants' arguments regarding the traditional absolute immunity for witness testimony, Plaintiff argues that Defendants Winchell and Stark are not absolutely immune from suit under that traditional immunity, because the Complaint alleges that these two Defendants acted individually and collectively with the other Defendants, acted as part of the duly organized Drug Task Force, and discriminated against Plaintiff based on his race. (*Id.*)

Third, in response to the County Defendants' arguments regarding 42 U.S.C. §§ 1981, 1985 and 1983, Plaintiff argues that he states a claim against the County Defendants under those three statutes for the following reasons: (a) he states a claim under 42 U.S.C. §§ 1981 and 1985, because the Complaint never alleges that he was present at the location of a drug sale, or that a drug sale occurred in his own residence, but that Defendants Winchell and Stark demonstrated racial animus against him, and that the County Defendants conspired to cause his arrest and prosecution based on his race; and (b) he states a claim under 42 U.S.C. § 1983, because the Complaint alleges facts plausibly suggesting the overt acts of a conspiracy, the lack of probable cause for his arrest and prosecution, and the procuring of the indictment against him by fraud, perjury, the suppression of evidence and other police conduct undertaken in bad faith (thus rebutting the presumption of probable cause resulting from the issuance of an indictment). (*Id.*)

Fourth, in response to the County Defendants' arguments regarding municipal liability, Plaintiff argues that his Complaint does state a claim for municipal liability against Defendants County of Washington, Washington County Sheriff's Department or Washington County District Attorney's Office for the following reasons: (a) Defendants Kortright and Murphy, as "the primary decision makers with respect to policies concerning . . . arrest[s] . . . and prosecution in criminal actions," are policymaking officials; (b) because they were "authorized to exercise all powers and duties available to them under State and County Law[,] . . . they are responsible for decisions relating to the hiring and training of their employees and the policies, practices and custom[s] of their respective departments on behalf of defendant Washington County; and (c) "[a] claim of municipal liability under Section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the . . . officers['] conduct conformed to official policy, custom, or practice."  (*Id.*)

Fifth, in response to the County Defendants' arguments regarding the doctrine of qualified immunity, Plaintiff argues that Defendants Murphy, Winchell, Stark, Kortright, Anderson and Stern are not protected from liability as a matter of law by that doctrine, because there are no factual allegations contained in the Complaint that would plausibly suggest "any basis that a reasonable person would have relied on to support a finding of probable cause for the arrest  and prosecution of the plaintiff."  (*Id.*)

### c.     County Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, the County Defendants assert four arguments.  (Dkt. No. 59.)  First, the County Defendants argue, Plaintiff's arguments regarding the doctrine of prosecutorial immunity are unpersuasive for the following reasons, *inter alia*: (a) Defendants Kortright, Anderson and Stern's alleged act of soliciting the confidential informant

by entering into a plea bargain agreement with him was prosecutorial in nature; (b) their alleged decision regarding what evidence to withhold from the grand jury was also prosecutorial in nature; and (c) their alleged ordering of the submission of evidence to the New York State Police Crime Lab in preparation for trial was also prosecutorial in nature. (*Id.*)

Second, the County Defendants argue, Plaintiff's arguments regarding 42 U.S.C. §§ 1981, 1985 and 1983 are unpersuasive for the following reasons, *inter alia*: (a) Plaintiff's continued conclusory allegation that the County Defendants' actions with respect to his arrest and prosecution were "motivated by racial animus" conveniently ignores the reasons leading to his arrest, as acknowledged in the Complaint; (b) the only factual allegation he offers of a meeting of the minds, in support of a conspiracy claim, is the existence of a newspaper article in which Defendant Murphy stated that Plaintiff's arrest was "handled appropriately," which is insufficient; and (c) Plaintiff's argument that the indictment against him was procured by fraud, perjury, the suppression of evidence and other police conduct undertaken in bad faith is supported by merely conclusory allegations of such things. (*Id.*)

Third, the County Defendants argue, Plaintiff's arguments regarding municipal liability are unpersuasive for the following reasons: (a) Plaintiff's attempt to render the County liable by relying on the decision-making roles and supervisory authority of Defendants Kortright and Murphy fails to plausibly suggest a link between any County policy, custom or practice and the alleged constitutional deprivations; and (b) the case on which Plaintiff relies for the point of law that a "bare allegation that the . . . officers['] conduct conformed to official policy, custom, or practice" suffices to survive a motion to dismiss is from the Ninth Circuit, has not been followed in the Second Circuit, and was issued before *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). (*Id.*)

Fourth, the County Defendants argue, Plaintiff's arguments regarding qualified immunity are unpersuasive for the following reasons: (a) Plaintiff has still not identified a single case in this Circuit that rendered the rights in question clearly established; and (b) in any event, although Plaintiff repeatedly references "reasonableness" or "reasonable conduct" in the abstract, he fails to identify in both the Complaint and his opposition papers any specific conduct by the individual County Defendants that was not "reasonable" (particularly in light of their relying on a confidential informant not secured by the County, their acting pursuant to a warrant of arrest, their searching the informant and his vehicle before the purchase of cocaine, their confirming that cocaine was purchased by the informant, their attempting a "control call" with Plaintiff before the purchase of cocaine, their observing Plaintiff present in the general area where the informant purchased the cocaine, their ascertaining that Plaintiff lived in the residence where the cocaine was purchased, and their relying on a grand jury indictment). (*Id.*)

### 4. Parties' Briefing on State Defendants' Motion to Dismiss

#### a. State Defendants' Memorandum of Law in Chief

Generally, in their motion to dismiss, the State Defendants assert eight arguments. (Dkt. No. 44, Attach. 1.) First, the State Defendants argue, Plaintiff's first claim fails as against them for the following reasons: (a) 42 U.S.C. § 1981 provides a remedy only for purposeful race-based discrimination concerning activities enumerated in the statute, and the Complaint does not allege facts plausibly suggesting that the State Defendants were personally involved in any purposeful discrimination against Plaintiff based on his race, or that any such discrimination concerned an enumerated activity; and (b) the Thirteenth Amendment provides a private remedy only for slavery or involuntary servitude through the aid of an implementing statute, and the Complaint does not allege facts plausibly suggesting slavery, involuntary servitude or reliance on an implementing statute. (*Id.*)

Second, the State Defendants argue, Plaintiff's second claim fails as against them for the following reasons: (a) liability under 42 U.S.C. § 1983 requires personal involvement in an alleged constitutional deprivation, and the Complaint does not allege facts plausibly suggesting that the State Defendants were personally involved in any such constitutional violations; and (b) in any event, the Complaint does not allege facts plausibly suggesting a violation of the First Amendment (which protects against interference with, *inter alia*, speech, association and petitions for the redress of grievances), the Fourth Amendment (which protects against, *inter alia*, arrests without probable cause), the Fifth Amendment (which protects against self-incrimination), the Sixth Amendment (which ensures, *inter alia*, the right to be confronted with the witnesses against him), the Eighth Amendment (which protects prisoners from, *inter alia*, cruel and unusual punishment in the form of unnecessary and wanton infliction of pain at the hands of prison officials), the Procedural Due Process Clause of the Fourteenth Amendment (which protects against the deprivation of a protected liberty or property interest without due process of law), the Substantive Due Process Clause of the Fourteenth Amendment (which protects against the infringement of certain fundamental liberty interest, unless the infringement is narrowly tailored to serve a compelling state interest), or the Equal Protection Clause of the Fourteenth Amendment (which protects against different treatment by the state compared to others similarly situated as a result of intentional discrimination). (*Id.*)

Third, the State Defendants argue, Plaintiff's third claim fails as against them for the following reasons: (a) even if the Complaint sufficiently alleges a violation of Plaintiff's rights under the First, Fourth, Sixth, Eighth or Fourteenth Amendments, the Complaint fails to allege facts plausibly suggesting an agreement between two or more State Defendants or between a State Defendant and a third party; (b) in any event, the Complaint fails to allege facts plausibly

suggesting that the goal of any such agreement was to act in concert to inflict an unconstitutional injury; (c) in any event, the Complaint fails to allege facts plausibly suggesting that the relevant State Defendant(s) committed an overt act in furtherance of that goal; and (d) in any event, the Complaint fails to allege facts plausibly suggesting that there was some racial animus behind the action of the relevant State Defendant(s). (*Id.*)

Fourth, the State Defendants argue, Plaintiff's eighth claim fails as against them for the following reasons: (a) his claim of false arrest/false imprisonment does not allege facts plausibly suggesting that the State Defendants were personally involved in his arrest, or that the arrest was unsupported by probable cause; (b) his claim of malicious prosecution/abuse of process does not allege facts plausibly suggesting that the State Defendants were personally involved in his prosecution, that the prosecution was malicious, or that they misused or perverted the legal process against Plaintiff based on an improper motive; (c) his claim of assault and battery does not allege facts plausibly suggesting that the State Defendants made offensive bodily contact with Plaintiff, or that they did so with the intent to injure Plaintiff; (d) his claim of negligence does not allege facts plausibly suggesting that the State Defendants breached any sort of legal duty to Plaintiff; (e) his claim of intentional infliction of emotional distress does not allege facts plausibly suggesting that the State Defendants engaged in extreme and outrageous conduct with the intent to inflict severe emotional distress upon Plaintiff; (f) his claim of negligent supervision does not allege facts plausibly suggesting that Defendant "New York State Commissioner Department of Corrections and Community Supervision" negligently hired, trained and/or supervised Defendants Torres and Hurteau (and indeed is undermined by the fact that the current Commissioner, Anthony J. Annucci, did not take office until May 1, 2013); and (g) his claim of conspiracy is defective for the reasons set forth earlier in this Decision and Order. (*Id.*)

Fifth, the State Defendants argue, in the alternative, all of Plaintiff's claims against them fail based on the doctrine of qualified immunity for the following reasons: (a) qualified immunity protects government officials from civil liability in the performance of their discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated; and (b) the conduct of Defendants Torres and Hurteau, as alleged, did not violate clearly established statutory or constitutional rights of which a reasonable official would have known. (*Id.*)

Sixth, the State Defendants argue, in the alternative, portions of Plaintiff's eighth claim fail as against the State Defendants for the following reasons: (a) the Eleventh Amendment precludes pendent state law claims for damages in federal court against employees of New York State Department of Corrections and Community Supervision to the extent those claims are asserted against the employees in their official capacities; and (b) New York Correction Law § 24 precludes pendent state law claims in federal court against employees of New York State Department of Corrections and Community Supervision to the extent those claims are asserted against the employees in their personal capacities based on acts performed within the scope of their employment and in the discharge of their duties. (*Id.*)

Seventh, the State Defendants argue, in the alternative, the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent eighth claim (should it decide to dismiss his federal claims before trial), especially because he has an action, arising out of the same transactions, against the State of New York pending in the New York Court of Claims (of which the Court may take judicial notice). (*Id.*)

Eighth, the State Defendants argue, in the alternative, the intentional torts contained in Plaintiff's eighth claim (i.e., the torts of false arrest, false imprisonment, malicious prosecution,

abuse of process, assault and battery, and intentional infliction of emotional distress) are barred

by the one-year limitations period contained in N.Y. C.P.L.R. § 215(3), because the most-recent

date alleged in the Complaint is December 6, 2012, and the Complaint was filed on January 22,

2014. (*Id.*)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the State Defendants' motion, Plaintiff addresses each of the

State Defendants' eight arguments. (Dkt. No. 54.) First, in response to the State Defendants'

arguments regarding his first claim, Plaintiff argues as follows: (a) the pleading standard that

governs this claim is the liberal notice-pleading standard set forth in *Conley v. Gibson*, 78 S. Ct.

99 (1957); (b) pursuant to that standard, he states a claim under 42 U.S.C. § 1981 because he

alleges facts plausibly suggesting that the State Defendants were personally involved in

purposeful discrimination against him based on his race (through their expression of racial

animus toward him, their involvement in the group investigation of him, and their false

statements about him), and that such discrimination concerned an enumerated activity; and (c) he

states a claim under the Thirteenth Amendment for the same reasons. (*Id.*)

Second, in response to the State Defendants' arguments regarding his second claim,

Plaintiff argues as follows: (a) he states a claim under the Fourth Amendment by alleging that

Defendants Torres and Hurteau expressed racial animus towards him in or before June of 2011

and then participating in a wrongful investigation, arrest and prosecution of him starting in

January of 2012 (for which there was not probable cause because the indictment was procured by

fraud, perjury, the suppression of evidence and other police conduct undertaken in bad faith); (b)

he states a claim under the Procedural Due Process Clause of the Fourteenth Amendment by

alleging "that he possessed a protected liberty to be free from unwarranted seizure and prosecution and that he was deprived of that interest without due process"; (c) he states a claim under the Substantive Due Process Clause of the Fourteenth Amendment by alleging "that the State Defendants infringed upon his fundamental liberties to be free from unreasonable searches, seizures and confinement," depriving him of "his liberties to be with his wife and children," "his livelihood" and "his personal property"; and (d) he states a claim under the Equal Protection Clause of the Fourteenth Amendment by alleging that Defendants Torres and Hurteau intentionally participated in an unjustified investigation, arrest and prosecution of him for racially discriminatory reasons.  (*Id.*)

Third, in response to the State Defendants' arguments regarding his third claim, Plaintiff argues as follows: (a) the Complaint alleges that "defendants . . . collaborated and conspired . . . to violate [his] constitutional rights . . ."; and (b) he "incorporates by reference his response to [the State Defendants' arguments regarding his claims under] 42 U.S.C. § 1981 and [the] Fourth Amendment . . . ." (*Id.*)

Fourth, in response to the State Defendants' arguments regarding his eighth claim, Plaintiff "incorporates by reference his response to [the State Defendants' arguments regarding his claims under] 42 U.S.C. § 1981 and [the] Fourth Amendment . . . ." (*Id.*)

Fifth, in response to the State Defendants' argument regarding qualified immunity, Plaintiff argues as follows: (a) there are no facts alleged in the Complaint plausibly suggesting that "the State Defendants were acting within their discretionary authority" when they engaged in the conduct in question; and (b) even if there are such facts, there are no facts alleged in the Complaint plausibly suggesting that a reasonable person would have believed that the conduct

engaged in by the State Defendants was lawful, or that probable cause existed for the arrest and prosecution of Plaintiff. (*Id.*)

Sixth, in response to the State Defendants' alternative arguments regarding his eighth claim (i.e., that it is barred by the Eleventh Amendment and New York Correction Law § 24), Plaintiff argues that the "pendent state law claim asserted in his eighth claim of his complaint is not barred from being heard in Federal Court and the Court should exercise supplemental jurisdiction over said claim." (*Id.*)

Seventh, in response to the State Defendants' argument that the Court should decline to exercise supplemental jurisdiction over the eighth claim, Plaintiff argues that "the Court should retain jurisdiction over plaintiff's eighth claim in the event plaintiff's federal claims are dismissed." (*Id.*)

Eighth, in response to the State Defendants' argument that the intentional torts contained in his eighth claim are barred by a one-year statute of limitations, Plaintiff argues that "the statute of limitations does not preclude the causes of action contained in plaintiff's eighth claim in that plaintiff duly filed a notice of claim in accordance with New York State General Municipal Law § 50." (*Id.*)

### c. State Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, the State Defendants assert four arguments. (Dkt. No. 60.) First, the State Defendants argue, Plaintiff's arguments regarding his first claim are unpersuasive for the following reasons, *inter alia*: (a) Plaintiff inaccurately states that his Complaint alleges that Defendant Torres falsely testified at his trial; (b) Plaintiff's allegations are vague and ambiguous as to the particular roles played by Defendants Torres and Hurteau in the

group procurement of false testimony by a confidential informant, the group photographing of Plaintiff, the group recording of a controlled sale of narcotics, and the group creation of an inaccurate sketch of Plaintiff's residence; and (c) in any event, even if Defendants Torres and Hurteau actually took the above-described actions and they constitute the deprivation of "the full and equal benefits of all laws and proceedings for the security of persons . . . as is enjoyed by white persons" for purposes of 42 U.S.C. § 1981 (which they do not), no facts are alleged that plausibly suggest that Defendants Torres and Hurteau purposefully discriminated against Plaintiff because of his race. (*Id.*)

Second, the State Defendants argue, Plaintiff's arguments regarding his second claim are unpersuasive for the following reasons: (a) he only conclusorily and formulaically recites the elements of a claim for a violation of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment; and (b) while he more-seriously addresses the pleading sufficiency of his claim for a violation of the Equal Protection Clause of the Fourteenth Amendment, he fails to point to any paragraphs of the Complaint that alleges facts plausibly suggesting that Defendants Torres or Hurteau actually falsely arrested or maliciously prosecuted him, or that they did so as a result of intentional discrimination. (*Id.*)

Third, the State Defendants argue, in the alternative, Plaintiff's arguments regarding his second claim are unpersuasive for the following reasons: (a) Plaintiff is incorrect that Defendants Torres and Hurteau's alleged involvement in his arrest and prosecution was a ministerial act rather than the performance of a discretionary function, as that term is applied to a qualified-immunity analysis; and (b) Plaintiff has not identified any conduct that Defendants Torres and Hurteau are specifically alleged to have engaged in that would have violated a clearly established constitutional right. (*Id.*)

Fourth, the State Defendants argue, Plaintiff's arguments regarding his eight claim are unpersuasive for the following reasons: (a) Plaintiff's argument that his intentional tort claims are not barred by the governing one-year limitations period because he filed a timely notice of claim pursuant to New York State General Municipal Law § 50 is incorrect, because § 50 applies only to service of notice of claims on public corporations, and in any event it cannot resurrect an untimely intentional tort claim; and (b) Plaintiff "does not even attempt to argue that the complaint states a cause of action against the Commissioner, thus conceding that it does not." (*Id.*)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standards Governing a Motion for Judgment on the Pleadings and a Motion to Dismiss for Failure to State a Claim

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.")

**B.** **Legal Standards Governing Plaintiff's Claims and Defendants' Defenses**

Because the parties have, in their memoranda of law, demonstrated an accurate understanding of the legal standards governing Plaintiff's claims and Defendants' defenses, the Court will not repeat those legal standards in detail in this Decision and Order, which (again) is intended primarily for the review of the parties. Rather, the Court will set forth those legal standards only where necessary below in Part III of this Decision and Order.

**III.** **ANALYSIS**

**A.** **Analysis of Village Defendants' Motion for Judgment on the Pleadings**

After carefully considering the matter, the Court dismisses Plaintiff's claims against the Village Defendants for each of the reasons offered by the Village Defendants in their memoranda of law. *See, supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds five points.

First, the Court rejects Plaintiff's absolute immunity argument on the additional ground that, by focusing on Defendants Gillis and Moulthrop's alleged acts other than their rendering of witness testimony, Plaintiff implicitly acknowledges that these two Defendants' alleged acts of rendering false and/or inconsistent testimony before the grand jury and/or at trial were entitled to absolute immunity. Moreover, the allegations of "wrongdoing" by Defendants Gillis and Moulthrop in the group investigation of Plaintiff are bereft of facts plausibly suggesting either

---

[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

actual wrongdoing or racial motivation. As a result, those allegations do not render a suggestion of extra-testimonial actionable activity plausible.

Second, the Court rejects Plaintiff's arguments regarding 42 U.S.C. §§ 1981, 1985 and 1983 on the additional ground that Plaintiff's attorney appears to have artfully crafted Paragraph 38 of the Complaint to hide the identity of which Defendant, among the seven Defendants present at the time, directed racial remarks and epithets at Plaintiff. (Dkt. No. 1, at ¶ 38.) The suggestion that each of the seven Defendants in the group made each of the five racial remarks alleged is implausible, especially given the specificity of other allegations in the Complaint. (*Id.*) This means that the Complaint offers mere speculation as to whether the sole Village Defendant present at the time–Defendant Gillis–used *any* of the racial remarks (and offers no factual allegations plausibly suggesting that any of the other Village Defendants was even present during use of racial remarks). This fact is important because generally, without more (such as *contemporaneous* abusive behavior), a non-decisionmaking defendant's mere presence during the use of a racial epithet by another person (especially when that other person holds a position superior to that of the defendant) does not give rise to an inference of racial animus by the defendant.[2]

Here, the allegedly abusive behavior of Defendant Gillis (which started with his approaching a confidential informant, promising him favorable treatment if he would entrap

---

[2]     *Cf. Chamberlain v. City of White Plains*, 986 F. Supp.2d 363, 389 (S.D.N.Y. 2013) ("Reprehensible as it is, a single use of a racial epithet by a single officer does not . . . plausibly indicate that the eight individual Defendant officers (or even a subset of them) entered into any sort of agreement . . . based on collective racial or personal animus."); *Johnson v. Harron*, 91-CV-1460, 1995 WL 319943, at *22 (N.D.N.Y. May 23, 1995) (McCurn, J.) (finding that Contraband Enforcement Team Member Richards possessed racial animus because, although he was not one of the officials who uttered racial slurs at plaintiff in his presence, he screamed at and threatened the plaintiff at the time).

Plaintiff, and entering into a cooperation agreement with him) occurred *after* the uttering of

racial remarks (which occurred at one or more points "[p]rior to January 2012"). (Dkt. No. 1, at

¶¶ 38, 43, 44.) Indeed, because the Complaint alleges that the racial epithets were uttered by

and/or with the knowledge of Defendant Parole Officers Torres and Hurteau, and that Plaintiff

was under parole supervision from November of 2005 to June of 2011, the Complaint plausibly

suggests that the racial epithets were uttered at least six months before the alleged conduct and

as much as six years before the alleged conduct. (*Id.* at ¶¶ 38, 39, 41.a.) Simply stated,

reprehensible as the alleged racial remarks are, they cannot be reasonably said to have rendered

the investigative action of Defendant Gillis more than six months later racially motivated.[3]

Third, the Court rejects Plaintiff's municipal liability argument on the additional ground

that, setting aside how permitting Village police officers to participate in a drug task force can be

characterized as a "formalized policy," the Complaint does not allege facts plausibly suggesting

how any such policy of permission *caused* the constitutional violations alleged (particularly

where, as here, the racial epithets were alleged to have been uttered by other Defendants, and the

Village Defendants' role in the group investigation appears to have been relatively minor).

Regarding Plaintiff's failure-to-train argument, the Court will not linger on the conclusory and

_____

[3]    *Cf. Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 275 (E.D.N.Y. 2013)
("[C]ourts in [the Second] Circuit have generally found that a five month lapse between an
allegedly discriminatory statement and an adverse employment action is too long a gap to find
the remark probative of discrimination without some other evidence that the remark was related
to the adverse employment action.") (collecting cases); *Yoselovsky v. Assoc. Press*, 917 F.
Supp.2d 262, 278 (S.D.N.Y. 2013) (collecting cases holding that comments made four to five
months prior to the plaintiff's termination did not constitute evidence of discrimination); *Del
Franco v. N.Y.C. Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 537 (E.D.N.Y. 2006) (finding no
temporal connection where "slightly more than three months" elapsed between the alleged
discriminatory remarks and the plaintiff's termination), *aff'd*, 245 F. App'x 42 (2d Cir. 2007);
*Arqueta v. Long Island Jewish Health Sys.*, 01-CV-4031, 2003 WL 22670915, at *9 (E.D.N.Y.
Nov. 6, 2003) (finding no nexus where remarks made more than five months before termination).

circular nature of an argument that the Village Defendants must have failed to train its employees because Plaintiff's constitutional rights were violated. More important is the fact that, although Plaintiff characterizes the alleged "fail[ure] to train and supervise [the Village of Hudson Falls'] employees in a fashion such as to prevent the violation of the plaintiff's constitutional rights" as "continu[ing] over an extended period of time," that allege failure–which allegedly concerned *one person's* constitutional rights–plausibly suggests only a single example of a failure to train. In and of itself, a single incident of misconduct does not constitute a practice or custom.[4]

Fourth, the Court rejects Plaintiff's qualified-immunity argument on the additional ground that, based on Plaintiff's own allegations (which, though numerous, are conspicuously devoid of any facts plausibly suggesting intentional discrimination by Defendants Moulthrop and Gillis), it was objectively reasonable for the Defendants Moulthrop and Gillis to believe that their acts did not violate any such clearly established rights.

---

[4]     *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal liability]."); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."); *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); *Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir. 1987) ("[A]bsent more evidence of supervisory indifference . . . a policy may not ordinarily be inferred from a single incident of illegality."); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327 (2d Cir. 1986) ("Since the existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by inference solely from evidence of the occurrence of the incident in question, . . . a plaintiff cannot prevail on a § 1983 claim against a municipality without introducing other evidence."); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980) ("We agree that, absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality . . . .").

Fifth, the Court accepts the Village Defendants' fifth argument (i.e., that Plaintiff's claims against Defendant Hudson Falls Police Department should be dismissed) on the additional ground that Plaintiff does not respond to that argument. In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.[5] Here, the Court finds that, at the very least, the Village Defendants have met their modest burden with regard this portion of their fifth argument.

### B. Analysis of City Defendants' Motion for Judgment on the Pleadings

After carefully considering the matter, the Court dismisses Plaintiff's claims against the City Defendants for each of the reasons offered by the City Defendants in their memoranda of law. *See, supra,* Part I.B.2. of this Decision and Order. To those reasons, the Court adds each of the five points contained above in Part III.A. of this Decision and Order (substituting, of course, the allegations against Defendants Casertino, Frettoloso and Valenza, for those against Defendants Gillis, Moulthrop and Diamond). The Court notes that, generally, the former three Defendants appear to have played a smaller alleged role in Plaintiff's investigation and prosecution than did the latter three Defendants. (*Compare* Dkt. No. 1, at ¶¶ 20, 21, 22, 38, 41.b. 53, 59 [containing factual allegations against Defendants Casertino, Frettoloso and Valenza] *with* Dkt. No. 1, at ¶¶ 15, 16, 17, 38, 41.b., 43, 44, 45, 46, 53, 55, 59, 70, 103 [containing factual allegations against Defendants Gillis, Moulthrop and Diamond].)

---

[5]      *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini,* 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue,* 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## C.    Analysis of County Defendants' Motion to Dismiss

After carefully considering the matter, the Court dismisses Plaintiff's claims against the City Defendants for each of the reasons offered by the City Defendants in their memoranda of law.  *See, supra,* Part I.B.3. of this Decision and Order.  To those reasons, the Court adds five points.

First, the Court rejects Plaintiff's prosecutorial immunity argument on the additional ground that, by focusing on Defendants Kortright, Anderson and Stern's alleged acts occurring approximately five months before his arrest, Plaintiff implicitly acknowledges that the later alleged acts, which constitute the bulk of these Defendants' wrongdoing, were prosecutorial in nature.  Moreover, even with regard to the pre-arrest acts, the Complaint alleges only conclusorily, without any supporting factual allegations, that these Defendants Stern acted in a role other than that of prosecutor when they allegedly solicited a confidential informant and became involved in the investigation.  As pled, the crux of Plaintiff's theory of liability is that (1) because he was acquitted at trial, the evidence against him must have been fabricated and/or intentionally misrepresented in a material way, and (2) because two of these three Defendants entered a plea agreement with the confidential informant and subsequently came to know about certain evidence (and the third Defendants supervised the office), they must have known about, and indeed caused, the fabrication and/or intentional misrepresentation.  This theory is plagued by insufficient circular reasoning, speculation and lack of personal knowledge as to render any suggestion of extra-prosecutorial activity implausible under *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal.*

Second, the Court rejects Plaintiff's absolute immunity argument on the additional ground that, by focusing on Defendants Winchell and Stark's alleged acts other than their

rendering of witness testimony, Plaintiff implicitly acknowledges that these two Defendants' alleged acts of rendering false and/or inconsistent testimony before the grand jury and/or at trial were entitled to absolute immunity. Moreover, the alleged non-testimonial acts relied on by Plaintiff consist of (1) "act[ing] individually and collectively as to [the other Defendants]," (2) being "included" in "a duty organized Drug Task Force," and (3) "discriminat[ing] against [Plaintiff] based on his race and exhibit[ing] racial animus toward [him]," as alleged in Paragraphs 36, 37, 38, and 41 of the Complaint. (Dkt. No. 1, at ¶¶ 36-38, 41.) These allegations are so vague and bereft of facts as to render any suggestion of extra-testimonial actionable activity implausible.

Third, the Court rejects Plaintiff's arguments regarding 42 U.S.C. §§ 1981, 1985 and 1983 on the additional ground that, in arguing that the County Defendants possessed racial animus, Plaintiff relies on Paragraphs 38 and 41 of the Complaint, in which he alleges only that individuals other than the County Defendants used racial slurs and threats against Plaintiff. (Dkt. No. 1, at ¶¶ 38, 41.) Moreover, the Court rejects Plaintiff's Section 1983 argument on the alternative ground that, in arguing that the Complaint alleges that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct taken in bad faith, Plaintiff relies on Paragraphs 78 through 84 of the Complaint, in which he presents only conclusory allegations of the County Defendants' *knowing* presentation of materially false evidence to the grand jury. (Dkt. No. 1, at ¶¶ 78-84.) Again, based on the few facts alleged, the inference of such knowledge is too speculative to be plausible (particularly in light of the corroborating evidence presented by the non-County Defendants). Finally, the Court rejects Plaintiff's arguments on the alternative ground that, even setting aside Plaintiff's failure to rebut the presumption of probable cause resulting from the indictment, probable cause existed from the

facts and circumstances alleged to have been known at the time of arrest (which included the fact that, on February 10, 2012, a confidential informant reported having bought narcotics in Plaintiff's residence from Plaintiff, and the existence of grounds to reasonably believe that Plaintiff was at least in the vicinity of the drug transaction at the time).

Fourth, the Court rejects Plaintiff's municipal-liability argument on the additional ground that his argument that Defendants Kortright and Murphy are policymaking officials as "the primary decision makers with respect to policies concerning . . . arrest[s] . . . and prosecution in criminal actions" does not mean that there existed any County policy, custom or practice pursuant to which the alleged constitutional deprivations occurred. Nor does the alleged fact that Defendants Kortright and Murphy "are responsible for decisions relating to the hiring and training of their employees and the policies, practices and custom[s] of their respective departments on behalf of defendant Washington County" mean that there existed any County policy, custom or practice pursuant to which the alleged constitutional deprivations occurred. Moreover, the case's point of law that a "bare allegation that the . . . officers['] conduct conformed to official policy, custom, or practice" finds its origin in a point of law established by *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retired" by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007). *See, supra,* Part II.A. of this Decision and Order.[6]

_____

[6]     *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988) ("In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.") (internal quotation marks omitted), *citing Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986) ("It is improper to dismiss on the pleadings alone a section 1983 complaint alleging municipal liability even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."), *citing Guillory v. Cnty. of Orange*, 731 F.2d 1379, 1381-82 (9th Cir. 1984) ("Assuming the truth of these allegations . . . , it

Fifth, the Court rejects Plaintiff's qualified-immunity argument on the additional ground that he does not respond to the County Defendants' argument that he has not identified a single case in this Circuit that rendered the rights in question clearly established. *See, supra,* Part III.A. of this Decision and Order (setting forth the burden on an unopposed motion). Here, the Court finds that, at the very least, the County Defendants have met their modest burden with regard this portion of their qualified-immunity argument.

**D.      Analysis of State Defendants' Motion to Dismiss**

After carefully considering the matter, the Court dismisses Plaintiff's claims against the State Defendants for each of the reasons offered by the State Defendants in their memoranda of law. *See, supra,* Part I.B.4. of this Decision and Order. To those reasons, the Court adds four points.

First, the Court rejects Plaintiff's arguments regarding his first claim on the additional ground that his reliance on the pleading standard set forth in *Conley v. Gibson*, 78 S. Ct. 99 (1957), is misplaced: again, that standard was "retired" by the Supreme Court in *Bell Atlantic Corp. v. Twombly*. Rather than being merely an error of citation, this error by Plaintiff appears to pervade much of his understanding of the pleading sufficiency of his claims. He appears to

_____

does not appear to a certainty that appellants would not be entitled to any relief."), *citing Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir.1982) ("Such a dismissal cannot be upheld unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved."), *citing Beneficial Life Ins. Co. v. Knobelauch*, 653 F.2d 393, 395 (9th Cir. 1981) ("Such a dismissal cannot be upheld unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved."), *citing Alonzo v. ACF Prop. Mgmt.*, Inc., 643 F.2d 578, 579 (9th Cir. 1981) ("[A] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that plaintiff would be entitled to no relief under any state of facts which could be proven."), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

fail to understand that he must *show* his entitlement to relief through pleading *facts* that raise a right to relief above the speculative level to a plausible level.

Second, the Court rejects Plaintiff's arguments regarding his first, second and third claims on the additional ground that there is a lack of temporal proximity between the remarks alleged and the conduct alleged, as discussed above in the second point in Part III.A. of this Decision and Order.

Third, the Court rejects Plaintiff's arguments regarding his first, second and third claims on the additional ground that probable cause existed to arrest him, regardless of whether one considers the indictment that was issued, as discussed above in the third point in Part III.C. of this Decision and Order.

Fourth, the Court rejects Plaintiff's arguments regarding his eighth claim on the additional ground that, by failing to substantively oppose the State Defendants' sixth and seventh arguments, he has lightened the State Defendants' burden with respect to those arguments, which they have met, at the very least.

**ACCORDINGLY**, it is

**ORDERED** the Village Defendants' motion for judgment on the pleadings (Dkt. No. 46) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the City Defendants' motion for judgment on the pleadings (Dkt. No. 41) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the County Defendants' motion to dismiss (Dkt. No. 33) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the State Defendants' motion to dismiss (Dkt. No. 44) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

The Clerk of the Court is directed to issue a Judgment for Defendants and close this action.

Dated: August 27, 2015
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge